Argued February 2, decided March 1 ; modified on rehearing May 24, 1910.

## MANSFIELD *v*. HILL.

[107 Pac. 471 ; 108 Pac. 1007.]

HOMESTEAD — PERSONS ENTITLED — RIGHTS OF SURVIVING WIFE AND CHILDREN.

1. The homestead exemption statute (Sections 221-226, B. & C. Comp.) does not create a homestead in which the wife or children have any right or title other than the right of owner thereof, or the wife, husband,

agent, or attorney of such owner, to claim it exempt from attachment, levy, or sale on execution, and the right of such exemption continues after the death of the owner.

HOMESTEAD—SELECTION.

2. The homestead exemption statute (Sections 221-226, B. & C. Comp.) does not permit the homestead to be selected, set off, or registered, so as to make it exempt *ipso facto,* or create an estate therein in favor of the spouse or children of the owner, but the exemption must be claimed by notice to the levying officer as in case of personal property.

HOMESTEAD—STATUTORY CONSTRUCTION—RIGHTS OF HEIRS.

3. Section 226, B. & C. Comp., provides that the homestead "shall be exempt from sale on any judicial process after the death of the person entitled thereto for the collection of any debts for which the same could not have been sold during his lifetime, but such homestead shall descend as if death did not exist." *Held* that the word "death" in the last clause was undoubtedly used inadvertently, instead of "exemption," and the effect of the law without that clause is that it will descend to the heirs if not devised or conveyed.

HOMESTEAD—EXTENT OF RIGHT.

4. A homestead being purely statutory, there is no greater right or estate therein than the statute creates.

HOMESTEAD—NATURE OF ESTATE.

5. The word "homestead" as used in the title of Laws 1893, p. 93, "To exempt homesteads from attachment and judicial sale," is not the designation of a particular estate, but it signifies the place where the family dwells, and the whole purpose of the act is to create an exemption from execution sale.

DEEDS—VALIDITY—MENTAL CAPACITY.

6. A deed is not void on the ground of mental incapacity, where the grantor, though in poor health, had sufficient mental vigor to understand the nature and effect of the deed.

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—EVIDENCE.

7. Evidence that the grantor was indebted to the grantee, and stated when he delivered the deed: "I want to give you this; I want you to take this for what I owe you. * * I can never pay you all you advanced. If you will take this, if I ever get able to, I will pay you the rest"— shows that the deed was intended as absolute, and not as security.

WILLS—CONCLUSIVENESS OF PROBATE—COLLATERAL ATTACK.

8. The county court having jurisdiction of the probating of wills (Article VII, Section 12, Constitution of Oregon; Section 911, B. & C. Comp.), a decree of that court probating a will in common form is conclusive, unless appealed from or impeached by a direct proceeding, and is not subject to collateral attack.

DIVORCE—ALIMONY—LIEN OF DECREE.

9. The provision of a decree of divorce for future monthly payments by defendant for support of wife and children until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien on his property.

DIVORCE—DECREE FOR ALIMONY—EFFECT OF DEFENDANT'S DEATH.

10. The provision in a decree of divorce for future monthly payments for support and education of children, as authorized by Section

513, B. & C. Comp., creates a personal liability of defendant, which, does not terminate at his death, but may be enforced against his estate.

HOMESTEAD—DEFINITION—EXEMPTIONS.

11. The term "homestead," as used in the exemption statute (Section 226, B. & C. Comp.), is not the designation of a particular estate implying prohibitions and limitations not incident to ordinary titles, but only means "the home place" or "the house and adjoining grounds" where the head of the family dwells.

HOMESTEAD—DISPOSITION—"BUT."

12. Section 226, B. & C. Comp., provides that the homestead shall be exempt from sale on any judicial process after the death of the person entitled thereto for the collection of any debts for which the same could not have been sold during his lifetime, but such homestead shall descend as if death [exemptions] did not exist. *Held*, that the word "but" is an adversative conjunction used in the sense of "on the other hand" or "yet," and is not intended as a prohibition against the owner's power to dispose of the homestead by will, nor was the statute intended to prescribe the sole mode by which the title might pass from the owner, but only that the descent should not be affected by the exemption clause.

DEEDS—CONVEYANCE—VALIDITY.

13. Where a grantor, when he executed a deed to his uncle, who was also his physician, was 38 years old, acknowledged his indebtedness to the grantee in a large sum, and stated that the conveyance was all he could do to settle, and delivered the deed, which was considered by both as a transfer of the fee and not as security, any *prima facie* presumption of undue influence arising out of relations of confidence and trust between the parties was rebutted.

DIVORCE—SUPPORT OF CHILDREN—MONTHLY PAYMENTS.

14. Section 514, B. & C. Comp., provides that, at any time after decree of divorce, the court may set aside, alter, or modify so much of the decree as may provide for the appointment of trustees for the care and custody of the minor children or the nurture and education thereof or the maintenance of either party, and Section 205, relating to judgments generally, declares that, from the date of docketing a judgment, it shall be a "lien" on all the real estate of the judgment debtor within the county, etc. *Held*, that where a divorce decree awarded judgment for attorney's fees and costs, and also provided for future monthly payments for the support of children, it became a lien from the date of docketing as to the attorney's fees and costs, but not as to the monthly payments to accrue.

PARTITION—RIGHT TO PARTITION—COMMON POSSESSION.

15. It is essential to the maintenance of a suit for partition, authorized by Section 435, B. & C. Comp., that the parties be in possession as tenants in common at the time the suit is commenced.

From Marion:  WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit for partition by Hattie E. Mansfield, the owner of an undivided one-third of 160 acres of land, and

by Alfred L. and Naomi C. Mansfield, infants, in and to the family homestead, of which their father Claude H. Mansfield, died possessed, consisting of an undivided two-thirds of said 160 acres of land situated in Marion County Oregon, and to quiet the adverse claims of the defendants J. L. Hill and Addie M. Thompson thereto.

On October 24, 1904, Claude H. Mansfield obtained a patent under the homestead laws of the United States, for the N. E. ¼ of section 20, township 9 S., range 7 E., situated in Marion County, Oregon. Prior to that date, and until the time of his death, he made his home thereon. Plaintiff, Hattie E. Mansfield, and Claude H. Mansfield, for many years prior to September 23, 1905, were husband and wife, but upon that date she procured a divorce from him. There were two children, the issue of their marriage, Alfred L. and Naomi C. Mansfield, who are plaintiffs herein, and, being minors, appear by their guardian. On October 24, 1904, Claude H. Mansfield and Hattie E. Mansfield executed to Hewitt & Sox a mortgage on the said land, to secure the payment of $340.85, attorney's fees due them in securing said patent. On the same date Claude H. Mansfield executed and delivered to defendant J. L. Hill, a warranty deed for an undivided one-third interest in said land, which was duly recorded in Marion County, Oregon, March 1, 1905. By the decree in said divorce suit, Hattie E. Mansfield was given the custody of the children and an undivided one-third of said land in fee, also a judgment against defendant therein for $50, her attorney's fees, and $419.85 costs, and it was further decreed that defendant pay to plaintiff, for the support and education of said children, $15 each month from May 5, 1905, until the further order of the court. Each of said sums was decreed to be a lien upon defendant Claude H. Mansfield's interest in said land. Thereafter, on April 24, 1906, Claude H. Mansfield died, but prior to his death he had executed a will devising all his

interest in said land to Addie M. Thompson, his mother, naming J. L. Hill executor thereof. The will was duly probated in the county court of Marion County, Oregon, on June 18, 1906, and thereafter, on February 27, 1907, Hattie E. Mansfield, both for herself and as guardian of her children, commenced this suit against J. L. Hill, individually and as executor, Addie M. Thompson, and Frank F. Reiner, the assignee of the said mortgage, alleging that the said Claude E. Mansfield was *non compos mentis* at the time of his executing the deed to J. L. Hill, and also at the time he made the above-mentioned will, and that the land, being a homestead, was not subject to conveyance or devise by him. After these and other allegations plaintiffs asked that the land be declared to be the homestead of Claude H. Mansfield under the State homestead exemption statute (Sections 221-226, B. & C. Comp.) ; that the deed to J. L. Hill and the will both be adjudged void; that a partition of said land be made according to the rights of the parties interested therein. Defendants, except Reiner, answered. The cause was tried by the circuit court upon the evidence, and findings and decree were rendered, adjudging that Reiner's mortgage is a first lien upon the said 160 acres of land; that J. L. Hill, Hattie E. Mansfield, and Addie M. Thompson are each the owner of an undivided third of said land; that Hattie E. Mansfield has a first lien on the one-third devised to Addie M. Thompson for the said $15 per month allowed to her for the support of the children from May 23, 1905, until April 24, 1906, the date of the death of Claude H. Mansfield, and a second lien, on said undivided one-third interest, to secure the sum of $50 attorney's fees, and a third lien against said interest, to secure the payment of the $419.85 costs in said suit. But the decree made no order for partition of said real estate. Plaintiffs appeal.                                    MODIFIED.

For appellants there was a brief with oral arguments by *Mr. Henry St. Rayner* and *Mr. Dan R. Murphy.*

For respondent there was a brief with oral arguments by *Mr. W. R. Bilyeu* and *Mr. Peter H. D'Arcy.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first question for consideration is whether the said 160 acres of land constitute the homestead of Claude H. Mansfield under the homestead exemption statute of this State. Sections 221-226, B. & C. Comp. This law is only a statute of exemption, and contains no other elements. It does not create a homestead in which the wife or children have any right or title other than the right of owner thereof, or the wife, husband, agent, or attorney of such owner, to claim it exempt from attachment, levy, or sale on execution, and this right to claim such exemption continues after the death of the owner.

2. There is no provision against a conveyance or incumbrance by the owner, except that it shall be exempt from execution or sale upon any mortgage in which the husband and wife did not join. It provides that such homestead must be the actual abode of, and owned by, such family or some member thereof. Notice by the husband or wife that he or she claims the exemption must be given to the officer who levies upon it. There is no provision by which it may be selected, set off, or registered so as to make it exempt *ipso facto* or creating an estate therein in favor of the spouse or children of the owner, but the exemption must be claimed as in the case of personal property.

3. Section 226, B. & C. Comp., provides that "the homestead aforesaid shall be exempt from sale on any judicial process after the death of the person entitled thereto for the collection of any debts for which the same could not have been sold during his lifetime, but such homestead shall descend as if death did not exist." The

use of the word "death" in the last clause seems to render it meaningless. It undoubtedly was used inadvertently instead of "exemption," and the effect of the law without that clause is that it will descend to the heirs if not devised or conveyed, for the reason that there is no inhibition against any disposition of the homestead that the owner may see fit to make. Its only effect is to make it exempt from execution if duly claimed by either spouse, against every character of execution except one issued upon foreclosure of a mortgage in which the husband and wife joined. Therefore it is subject to devise or conveyance by the owner, or descends to the heirs under the statute. Waples, Homestead and Exemption, cited by plaintiffs' counsel is not in point upon our statute. The statutes upon which he based his statement of the law are very different from the Oregon homestead exemption law. The Illinois statute (Starr & C. Ann. St. p. 910, § 1) creates a homestead which shall be exempt from the law of conveyance, descent, or devise, and section 2 provides that such exemption shall continue after the death of the owner so long as the other spouse lives, and until the child becomes 21 years of age. In Texas the homestead is created by the constitution (Article 16, §§ 51-52), which cannot be conveyed, nor can a lien be created thereon, by the husband without the consent of the wife, and on the death of the owner it shall descend to the heirs at law, subject to the homestead in favor of the other spouse. In Iowa the homestead is exempt, not only from execution but from contract, conveyance, or incumbrance. It must be selected and recorded, and descends to the heirs subject to the homestead. The statutes of many other states are to the same effect.

4. A homestead is purely statutory, and therefore gives no greater right nor estate than the statute creates. 21 Cyc. 460; *Wright* v. *Whittick,* 18 Colo. 54 (31 Pac. 490).

And if the statute contains no prohibition against a conveyance or devise, then none exists. 21 Cyc. 527.

5. The title to this enactment (Laws 1893, p. 93) is, "to exempt homesteads from attachment and judicial sale." The word "homestead" is not the designation of a particular estate, but signifies the place where the family dwells, and the whole purpose of this act is to create an exemption from execution sales. Therefore the facts alleged here disclose no rights in favor of plaintiffs, arising out of the homestead exemption law.

6. The evidence, offered to show the mental incapacity of Claude H. Mansfield, on October 24, 1904, to execute the deed to J. L. Hill, relates principally to his use of opiates and acetanilides, and but little is disclosed as to his language or demeanor, indicating insanity or mental incapacity, and nothing whatever showing incapacity at the time of the execution of the deed. Many of his acquaintances testified that at about the time of the execution of the deed, and before and after, he was of sound mind. The evidence tends strongly to establish that, although he was in poor health, he was in his usual mental vigor, and understood well the nature of the business and the effect of it: *Carnegie* v. *Diven*, 31 Or. 366 (49 Pac. 891; *Dean* v. *Dean*, 42 Or. 290 (70 Pac. 1039) ; *Reeder* v. *Reeder*, 50 Or. 206 (91 Pac. 1075).

7. It is further contended that the deed, although absolute in form, was in fact intended as a mortgage, but we find nothing in the evidence to sustain such a contention. The deed was delivered to J. L. Hill as a payment, and not as a security. Claude H. Mansfield was largely indebted to J. L. Hill for money advanced in securing, improving, and acquiring title to the homestead and he had no other property, and when he delivered the deed he said: "I want to give you this; I want you to take this for what I owe you." And again: "I can never pay you all you advanced. If you will take this, if I ever get able to, I will pay you

the rest." There was no reservation in favor of, or right of, redemption in the grantor.

8. Plaintiffs seek in this suit to have the will of Claude H. Mansfield canceled on the ground that the testator lacked the mental capacity to make it at the time of its execution, but the probate of the will in the county court is conclusive upon plaintiffs in this suit, which is a collateral attack: *Morrill* v. *Morrill,* 20 Or. 96 (25 Pac. 362: 11 L. R. A. 155: 23 Am. St. Rep. 95). The constitution gives to the county court jurisdiction pertaining to probate. Article VII, § 12, and Section 911, B. & C. Comp., provide:

"The county court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is —(1) to take proof of wills; (2) to grant and revoke letters testamentary of administration and of guardianship."

Whenever a will is probated in common form, as was done in this case, it may thereafter be contested in that court by a direct proceeding for that purpose. And the decree of the county court is conclusive until vacated by appeal or impeached by a direct proceeding: *Jones* v. *Dove,* 6 Or. 188; *Hubbard* v. *Hubbard,* 7 Or. 42; *Brown* v. *Brown,* 7 Or. 285; *Clark* v. *Ellis,* 9 Or. 128. In 1893 the legislature made provision that "when a will has been admitted to probate any person interested may, at any time within one year, after such probate, contest the same or the validity of such will; * * and all proceedings for such contests or for probating wills must be begun within the time herein specified." Section 1108, B. & C. Comp. Hence the decree of the county court is conclusive in this case upon the validity of the will.

9. The provision of the divorce decree for future monthly payments by defendant until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a

specific sum which may become a lien upon his property. The very idea of a lien upon property involves certainty as to the amount, so that persons dealing with defendant, as well as defendant himself, may know how much is involved; otherwise he would be precluded from dealing with his property at all, since it would be impossible for him to pay the lien. Freeman, Judgments, § 340, says: "There can be no lien except upon such judgments as the plaintiff is entitled to satisfy by levy upon the lands of the debtor. * * The judgment must be for a specified sum." To the same effect is Black, Judgments, § 407.

10. That part of the decree in the divorce suit is a personal· liability of defendant, but did not terminate at his death, as held by the lower court. It is a continuing liability against his estate. The statute (Section 513 B. & C. Comp.), relating to divorce proceedings, provides:

"(2) For the recovery of the party in fault and not allowed the care and custody of such children, such amount of money in gross or in installments, as may be just and proper for such party to contribute toward the nurture and education thereof."

This statute contemplates that the provision shall be such as will provide for the children according to their station in life as long as they may need it, if defendant is of sufficient financial ability to do so, and the effect of such an order as was made in this case does not necessarily terminate with the death of the defendant, but may be enforced against his estate. It is so held in *Miller* v. *Miller,* 64 Me. 484, and in *Creyts* v. *Creyts,* 143 Mich. 375 (106 N. W. 1111: 114 Am. St. Rep. 656). In the latter case it is held:

"In the absence of a statute the court could do no more than to enforce the decree * * by proceedings to which the representative should be made a party if it could do anything in the premises; it being suggested that in that case the wife would be on the same footing with any other claimant, and be obliged to obtain and be satisfied with allowance and payment through the probate court."

In that state, however, the statute makes such a decree a lien upon the real estate of the defendant, and provides for its enforcement.

This is a suit for partition, and it is alleged and seems to be conceded, that the land cannot be divided equitably. The court is asked to direct a sale thereof for the purpose of partition, which will be granted. And it is adjudged that Hattie E. Mansfield, J. L. Hill, and Addie M. Thompson are each the owner of an undivided one-third of the land, subject to the lien of said mortgage and the interest of Addie M. Thompson is subject to the payments herein provided for and to the payment of the debts and expenses of the estate of Claude H. Mansfield, deceased.

It is therefore adjudged and decreed that said land be sold in the manner provided by law for the purpose of partition; that the proceeds of such sale be disbursed as follows: First, to the satisfaction of the mortgage debt, due Frank Reiner, of the sum of $340.85, with interest thereon from October 24, 1904, at 6 per cent per annum, total $449.92; second, to the costs to both plaintiffs and defendants in this and in the circuit court; third, that one-third of the remainder be paid to defendant J. L. Hill, and one-third to Hattie E. Mansfield; fourth, to the payment of the monthly allowance for the maintenance and education of the children, $15 per month from May 23, 1905, to this time, being 57 months, and equaling $855, with interest thereon at the rate of 6 per cent per annum, which is $121.80, total, $976.80; and, fifth, that there be paid to Hattie E. Mansfield the said $50 attorney's fees and $419.85 costs, with interest thereon from the 23d day of September, 1905, at 6 per cent per annum, total, $594, and the remainder of said purchase price, if any, be paid over to J. L. Hill as executor of the will of Claude H. Mansfield, subject to administration of said estate, and that the cause be remanded to the lower court for the purpose of carrying out the provisions of this degree.          MODIFIED: REMANDED.

Decided May 24, 1910.

## ON PETITION FOR REHEARING.

[108 Pac. 1007.]

MR. JUSTICE EAKIN delivered the opinion of the court.

11. The principal ground for the motion relates to the court's holding that the homestead law is only a statute of exemption. This point was fully discussed in plaintiff's brief and is covered in the opinion to which we adhere.

It is urged that the term "homestead" is a designation of a particular estate, implying some prohibitions and limitations not incident to ordinary titles. But the term only means "the home place," or "the house and adjoining grounds where the head of the family dwells," and the text-writers, quoted by counsel, in discussing the homestead and its incidents, do so only with reference to the conditions and limitations placed upon it by statute. Every homestead law of other states, cited by counsel, contains provisions prohibiting alienation, incumbrance, and devise. The decisions are based on these limitations, and, if they were found in our statute, they would be in point.

12. The provision in Section 226, B. & C. Comp., that "the homestead aforesaid shall be exempt from sale on any judicial process after the death of the person entitled thereto for the collection of any debts for which the same could not have been sold during his lifetime, but such homestead shall descend as if death did not exist," contains no suggestion that it is intended as a limitation upon the owner's right to devise the property. On the contrary the last clause is a limitation upon the exemption named. "But" is an adversative conjunction, and is used in the sense of "on the other hand" or "yet," and is not intended as a prohibition against the owner's power to dispose of it by will or to prescribe a mode by which alone the title

may pass from the owner, but only that the descent shall not be affected by the previous exemption clause.

13. Again, counsel contend that, in holding that the deed from Mansfield to Hill is void, we overlooked the fiduciary relation existing between Hill and Mansfield. The relation suggested by plaintiffs is that Hill was the uncle of Mansfield and his physician. It is contended that this relationship is fiduciary, from which undue influence is *prima facie* presumed, and casts the burden upon Hill to prove that there was no undue influence. Assuming, without deciding, that such relationship brings the case within the rule that shifts the burden of overcoming the presumption, the evidence establishes the fact that Mansfield, at his own suggestion, and without previous consultation with Hill, executed the deed. He was thirty-eight years old, acknowledged his indebtedness to Hill in a large sum, said it was all he could do, and delivered the deed to Hill; and it was considered by both Mansfield and Hill as a transfer of the fee-simple title, and not as a security. It is said in 29 Am. & Eng. Enc. Law (2 ed.) 122, that the *prima facie* presumption of undue influence arising from relations of confidence and trust is rebutted by any evidence going to show that everything between the parties was fair, open, voluntary, and well understood. In *Hamilton* v. *Holmes,* 48 Or. 453 (87 Pac. 154), where a similar question arose, it is said that a contract entered into in such a case will be upheld when it appears to be fair and honest. To the same effect is *Ah Foe* v. *Bennett,* 35 Or. 231 (58 Pac. 508).

14. The evidence in this case shows that the transaction was fair and honest, and free from undue influence. As to the question of the lien of the decree in the divorce case of *Mansfield* v. *Mansfield,* in the circuit court of the State of Oregon for Multnomah County, for monthly payments for the support of the children, Section 514, B. & C. Comp., cited by counsel, makes no provision for a lien, as

is the case in some states; if the amount were a definite sum named in the decree, it would constitute a lien from the time it is docketed, under the terms of Section 205, B. & C. Comp., which provides that, from the date of docketing a judgment as in this chapter provided, such judgment shall be a lien upon all the real property of the defendant within the county, etc. This monthly allowance is a continuing liability, and no part of it was due when the decree was rendered, and it may be terminated at any time, and its amount is impossible of computation. For that reason it does not come within the holding in *Taylor* v. *Taylor*, 47 Or. 47 (81 Pac. 367), cited by counsel, in which the amount was allowed for the support of the children in one specified sum. But the judgment in the divorce suit for attorney fees and costs became a lien from the date the judgment was docketed.

15. The complaint prays that "partition of said land be made according to the rights of the parties interested therein," and in the opinion we assumed that a partition was desired by both parties, and so ordered; but plaintiffs now disclaim any desire for a partition as between them and defendants, and the complaint does not allege facts entitling plaintiffs to partition under Section 435, B. & C. Comp., it being necessary that the parties to such suit be in possession of the property, as tenants in common, at the time of the commencement of the suit, which is not alleged: *Sterling* v. *Sterling*, 43 Or. 200 (72 Pac. 741). Therefore, we will modify the relief granted in the opinion as follows:

It is, therefore, adjudged that the said land is subject to the lien of Frank Reiner's mortgage; that, subject thereto, J. L. Hill is the owner of an undivided one-third of said real property; that Hattie Mansfield is the owner of one-third thereof; that the will of Claude M. Mansfield is valid and devises to Mrs. Addie M. Thompson an undivided one-third of said land subject to the lien of said

mortgage, and also subject to the lien of the judgment in the said divorce suit of *Hattie E. Mansfield* v. *Claude H. Mansfield,* in the sum of $50 attorney fees and $419.85 costs, with interest thereon from the date thereof at the rate of six per cent per annum, viz., $701.40; also subject to the administration of the estate of Claude H. Mansfield, deceased, now pending in the county court of Marion County, Oregon, including the payment to Hattie E. Mansfield of the allowance of $15 per month for the support and education of the children of the parties thereto made by the decree in said divorce suit, said installments beginning September 23, 1905, with interest thereon from the maturity thereof at six per cent per annum until the said children attain their majority or the said order is revoked; and that plaintiffs have their costs and disbursements.  .   FURTHER MODIFIED ON REHEARING.