Argued September 12, decided October 7, 1913.

## SAPPINGFIELD *v.* SAPPINGFIELD.

(135 Pac. 333.)

**Wills—Probate—Conclusiveness.**

1. Under Article VII, Section 12, of the Constitution, conferring
probate jurisdiction on County Courts, Section 1141, L. O. L., provid-
ing that the proof of a will shall be taken by the County Court when
the testator at or immediately before his death was an inhabitant of
the county, and Section 756, providing that a judgment, decree, or
order against a specific thing or in respect to the probate of a will,
etc., is conclusive upon the title to the thing, the will, or administra-
tion, etc., a decree of the County Court of a county, of which a tes-
tator was at the time of her death a resident and inhabitant, admitting
her will to probate, could not be attacked in a collateral proceeding to
set aside a conveyance by the testator of land, which but for the con-
veyance would have passed under the residuary clause of the will.

**Cancellation of Instruments—Suits—By Whom Maintainable.**

2. A suit against the son of a decedent could not be maintained
by her other children to set aside a conveyance to him on the ground
of undue influence, where a will of the decedent containing a residuary
clause in favor of such son had been duly admitted to probate, since,
if the deed was void, the devise invested him with the title to the
land, and the other children were therefore strangers to the title.

**Deeds—Validity—Undue Influence—Evidence.**

3. A deed from an aged mother to a son would not be set aside on
evidence showing merely that he had lived with and taken care of

her for several years prior to her death, and that he therefore had an opportunity to influence her in the disposition of her property, where there was no evidence that he ever employed this opportunity to swerve his mother in his own interest, while the evidence did show that in all transactions concerning the land she had the benefit of independent counsel, and gave her own directions about what she wished to do, since no presumption could be indulged against him merely because he had been faithful to his filial duty, and had gained her confidence and generosity, and while the courts will carefully scrutinize transactions between near relatives, especially where a situation of trust and confidence exists, they cannot proceed on mere conjecture and vague possibilities.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.     Statement by MR. JUSTICE BURNETT.

This is a suit by H. A. Sappingfield and Amanda King, Flora Sappingfield, Willard Sappingfield, Hettie Merrick, Nellie Beardsley, George Sappingfield, Lillie Stowe, Bryant Sappingfield, Ivie Broderson, Carrie Sappingfield, A. Alexander Sappingfield, and Roy Sappingfield, against Charles Sappingfield and Mary Sappingfield, his wife, the plaintiffs being all the living descendants of Mary Sappingfield, now deceased, with the exception of her son, the defendant Charles Sappingfield, to set aside a conveyance to the latter of the south one half of her donation land claim, made by the decedent during her lifetime.

In substance the complaint recites that the decedent had made a contract with her husband, John Sappingfield, whereby she executed a deed to him for the land in question here, and he made a will in her favor, bequeathing his property to her during her life, with the remainder to their children equally, after taking into account sundry advancements to some of them. It is averred that John Sappingfield died March 8, 1903, and that his will was admitted to probate; that afterward the defendant induced the decedent, his mother, to commence suit against all her children and their legal representatives to quiet her title to the

premises here involved; and that afterward, upon issue joined, the court decreed that the title to the property was vested solely in the decedent, Mary Sappingfield. The complaint otherwise alleges that Mary Sappingfield was illiterate and feeble, her eyesight and hearing greatly impaired; that she was easily persuaded in her course of conduct; that the defendant and his wife at all the times mentioned therein lived with his mother; that she fully trusted to him the conduct of all her business; and that she depended entirely upon him for guidance in all matters of a business nature. It is also alleged: ''That on or about the 5th day of November, 1905, defendant, in pursuance of his plan to secure all of said premises to himself, and taking advantage of the mental and physical condition of the said Mary Sappingfield, and of her illiteracy and the confidence that she reposed in him as son and agent, and of the effect upon her mind of said suit with her said children, procured from the said Mary Sappingfield her signature to a certain instrument of writing purporting to be a warranty deed conveying to him for the pretended consideration of one thousand ($1,000) dollars and love and affection all of the above-described premises in fee, but in truth and in fact no money whatever was paid to the grantor as a consideration for said conveyance.''

Asserting that Mary Sappingfield died intestate in Marion County, Oregon, about September 4, 1911, leaving as her heirs at law and her only heirs her said living children and their heirs by right of representation, as set forth in the complaint, plaintiffs pray for a decree declaring the conveyance void and for its cancellation. The answer traverses every allegation of the complaint, except as otherwise admitted. It concedes the relationship of the parties, the suit by Mary Sappingfield to quiet her title to the land in dispute, .

and its result in her favor, and the execution and delivery of the deed from his mother to the defendant Charles, excepting that the same reserves to her a life estate during her life. Her death is admitted; but the date is placed at August 26, 1911.

Concerning the conveyance sought to be avoided, the defendant alleges in substance that, prior to the commencement of the suit to quiet her title, the mother voluntarily proposed to her son Charles that, if he would pay the expenses of the suit and attorneys' fees of $1,200, which she agreed upon with her counsel, aggregating an estimated total of $1,400, she would convey to him, subject to her life estate therein, the premises in question, to which proposal he assented, afterward paid the amount agreed upon, took and recorded the deed, has ever since been the owner of and entitled to the possession of the property, subject to the life estate of his mother, until her death, and since then the absolute owner in fee. The reply denied the allegations of the answer in material particulars. From a decree for the plaintiffs, the defendant, Charles, Sappingfield, appeals.    REVERSED: SUIT DISMISSED.

For appellant there was a brief over the names of *Mr. Claire M. Inman* and *Mr. Frank A. Turner,* with an oral argument by *Mr. Inman.*

For respondents there was a brief and an oral argument by *Mr. L. H. McMahan.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. Although the complaint states that the plaintiffs are lineal descendants of Mary Sappingfield, deceased, and that she died intestate, we are left to infer that the resulting estate inherited from her continued until the time of the commencement of this suit.

Passing that, however, the allegation that she died intestate is denied by the answer. No proof was offered by the plaintiff on this issue. On the contrary, the defendant offered in evidence, without objection on the part of plaintiffs, a certified copy of the proceedings of the County Court of Marion County, in the matter of the probate of the will of Mary Sappingfield, deceased, dated March 28, 1906. The petition for that purpose alleges that Mary Sappingfield died on August 26, 1911, in Marion County, State of Oregon, and was at the time of her death a resident and inhabitant of said county and state, and left an estate in that county consisting of personal property of the probable value of not more than $200. It also sets forth the names of certain persons, including the plaintiffs in this suit, and the defendant Charles Sappingfield, giving their names, ages and residences so far as known, and declaring them to be all the heirs at law of the decedent. The execution of her will is alleged in appropriate terms, and the petition concluded with a prayer for its admission to probate. The County Court is thus shown to have had jurisdiction of the subject matter of that proceeding, under Section 1141, L. O. L., which declares that: "Proof of a will shall be taken by the County Court as follows: (1) When the testator, at or immediately before his death, was an inhabitant of the county, in whatever place he may have died. * * * " A copy of the will with the probative testimony of its execution appears in the record, and on September 20, 1911, the County Court made an order admitting it to probate. The effect of such a decree is thus declared by Section 756, L. O. L.:

"The effect of a judgment, decree, or final order in an action, suit, or proceeding before a court or judge thereof of this state or of the United States, having jurisdiction to pronounce the same is as follows: (1)

In case of a judgment, decree, or order against a specific thing, or in respect to the probate of a will or the administration of the estate of a deceased person, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment, decree, or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person. * * ''

This decree rendered by the County Court, in a matter over which it had general jurisdiction, under Article VII, Section 12 of the Constitution, conferring probate jurisdiction upon County Courts, and which has not yet been disturbed by legislation under the authority of the amendment to that article of the fundamental law, is conclusive as to the effect of the will in question.

Turning now to the terms of that document, we find that, after bequeathing to each of the plaintiffs in this suit the sum of one dollar it contained this provision: "Third: Having heretofore made and delivered unto my son, Charles Sappingfield, a deed to my donation land claim excepting my life estate therein, and it being my desire that he should have all of my property after my death not heretofore conveyed to him, I hereby give, bequeath and devise unto my said son Charles Sappingfield all the residue and remainder of my property of whatsoever kind and wheresoever found, and I hereby revoke expressly and declare null and void all wills heretofore by me made." This instrument, thus authenticated and sanctioned by the decree of a court of competent general jurisdiction, conclusively shows not only that the title to the realty involved is not in the plaintiffs, but, on the other hand, is vested in the defendant Charles Sappingfield. If the deed, by reason of anything alleged in the complaint, was void, so that the property there described did not pass

67 Or.—11

from Mary Sappingfield, the subsequent devise to Charles of "all the residue and remainder of my property of whatsoever kind and wheresoever found" would invest him with the title to the land in dispute. If nothing else were shown, this must necessarily result in a decree in favor of the defendant dismissing this suit, for no stranger to the title can maintain a suit to remove a cloud from it or quiet it. The complaint itself traced the property to the decedent by virtue of a decree of the Circuit Court affirmed by this court in *Sappingfield* v. *King,* 49 Or. 102 (89 Pac. 142, 90 Pac. 150, 8 L. R. A. (N. S.) 1066). The record shows not only the execution of the deed, but its subsequent ratification by the will of the decedent. The probate of the will and its resultant estate are absolutely unassailable in this collateral proceeding. The authorities are reviewed by Mr. Justice EAKIN in *Mansfield* v. *Hill,* 56 Or. 400 (107 Pac. 471, 108 Pac. 1007).

3. On the merits of the question of fact, the testimony reported in the record shows nothing further on behalf of the plaintiffs except that, by virtue of having lived with his aged mother for several years, and having taken care of her during her decline and until her death, he had an opportunity to influence her in the disposition of her property. A careful perusal, however, of all the history of the case as detailed by the witnesses and reported in the record shows nothing indicating that the defendant ever employed his opportunity in any way to swerve his mother in his own interest. The testimony shows that the old lady was alarmed over the possibility that she had deprived herself of a home by the transaction with her husband, and after consulting counsel of her own choosing she commenced the suit to quiet title described in the complaint. The principal defendants there and plaintiffs

here resisted that suit, which furnishes a very plausible reason for her disposing of the property as she did. In all the transactions about the land she had the benefit of independent counsel, and gave her own directions about what she wished to do, fully supplying a case to meet the standard set up in *Williams* v. *Williams,* 63 Md. 371, cited by plaintiffs. It may be noted in passing that two of the members of the court which heard that case filed a strong dissenting opinion, which is mentioned with approval by the Maryland Supreme Court in *Brown* v. *Mercantile Trust & Deposit Co.,* 87 Md. 377, 392 (40 Atl. 256), and *Rogers* v. *Rogers,* 97 Md. 573, 585 (55 Atl. 450). Children have no vested rights in the property of a parent, and, however partial or extravagant the owner may be in the disposition of her estate, her descendants have no ground of complaint so long as it was her own deliberate act. No presumption can be indulged against a grantee in such cases merely because he has been faithful to his filial duty, and in that manner gained the confidence and generosity of his parent. True enough, in this instance he had the opportunity and might have overreached his mother. The court, however, cannot decide upon what might have been, but what was, and while, when properly assailed, courts will carefully scrutinize transactions between near relatives, especially where a situation of trust and confidence exists, there must be some ground alleged and proved requiring the interposition of equity. Chancery cannot proceed on mere conjecture and vague possibilities.

The decree of the Circuit Court is reversed and the suit dismissed.          Reversed : Suit Dismissed.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Ramsey concur.