[No. 30043. Department One. April 10, 1947.]

THOMAS A. SWANSON et al., Appellants, v. FLORENCE ISABEL GRAHAM et al., Respondents.[1]

[1]Reported in 179 P. (2d) 288.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellants.

*J. Will Jones,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action for an injunction against an execution sale of real property.

Plaintiffs' amended complaint alleged that, on November 19, 1937, in King county, Washington, one William B. Graham obtained an interlocutory decree of divorce from Florence Isabel Graham; that said decree awarded the custody of the minor child of said parties to the defendant, and provided for the settlement of the property rights, and further provided that the plaintiff should pay the defendant the sum of thirty dollars per month for the care and support of the said child, said payments to commence on the first day of December, 1937; that the final decree was entered May 21, 1938.

That on or about December 10, 1938, said William B. Graham purchased from one Alice K. Nepple the real property described in the complaint (the property involved in this action), receiving a conveyance thereof by warranty deed, filed for record with the auditor of King county December 21, 1938.

That on or about September 19, 1941, plaintiffs entered into a contract to purchase said property from William B. Graham for four thousand seven hundred fifty dollars, to be paid five hundred dollars down and forty-three dollars or more per month; that they completed payment on September 11, 1945, and received a deed of conveyance from Graham, dated August 28, 1945, which they filed for record December 17, 1945.

That on January 23, 1946, in the divorce proceedings, there was filed, on behalf of the defendant (Florence Isabel Graham), an application for a writ of execution, supported by an affidavit, reciting that all amounts payable under the divorce decree had been paid up to and including the month of September, 1942; that the minor child of the parties became twenty-one years of age September 21, 1945; and stating that there was unpaid on said judgment monthly installments totaling one thousand eighty dollars, all of said payments becoming due and payable subsequent to September, 1942.

That all amounts due and payable under the terms of the divorce decree had been paid in full up to the date plaintiffs purchased the property.

That pursuant to said application the clerk of the court issued to the sheriff of King county a purported writ of execution ordering him to collect from William B. Graham the balance of one thousand eighty dollars, and that pursuant to the said writ the sheriff did, on January 23, 1946, levy on the plaintiffs' property, and announced that said property and all interest of said William B. Graham therein, would be sold March 16, 1946, to satisfy said purported judgment.

That Florence Isabel Graham had been advised of the interests of the plaintiffs in the property, but that nevertheless she would, unless restrained, proceed with said sale.

That plaintiffs purchased said property in good faith and for value, without any knowledge concerning the claim of defendant.

Plaintiffs prayed for a decree adjudicating that they are the owners in fee simple of the property, free and clear of

any claims of the defendants; and that they be granted a permanent injunction, enjoining the defendants from conducting said execution sale.

Defendants demurred to the complaint, which demurrer was sustained. From a judgment dismissing the complaint, this appeal follows.

The question for determination is whether or not the judgment in the divorce case providing for alimony installments, when entered, created a lien against the present and after-acquired real property of the defendant. Rem. Rev. Stat., §§ 445 and 445-1 [P.P.C. §§ 68-1, 68-3], provide as follows:

"§ 445. Judgment lien. The real estate of any judgment debtor, and such as he may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the district court of the United States rendered in this state, any judgment of the supreme or superior court of this state, and any judgment of any justice of the peace rendered in this state, and every such judgment shall be a lien thereupon to commence as hereinafter provided and to run for a period of not to exceed six years from the day on which such judgment was rendered: . . ."

"§ 445-1. Commencement of judgment liens. The lien of judgments upon the real estate of the judgment debtor shall commence as follows:

"(a) Judgments of the district court of the United States rendered in the county in which the real estate of the judgment debtor is situated, and judgments of the superior court for the county in which the real estate of the judgment debtor is situated, from the time of the entry thereof; . . ."

In *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017, we held:

"While the precise question here urged was not presented in any of the cases cited, we are clearly of the opinion that, under those authorities, it must be held that a judgment for alimony payable in installments is, in so far as accrued installments are concerned, such a judgment as affords a legal basis for the issuance of a writ of garnishment."

The opinion concludes with the following statement, p. 270:

"We conclude that such a decree as was entered in favor of this appellant constitutes, in so far as accrued install-ments of alimony due thereunder are concerned, a final judgment which may be enforced either by attachment of the person or by the ordinary means provided for collec-tion of judgments."

See, also, *St. Germain v. St. Germain,* 22 Wn. (2d) 744, 157 P. (2d) 981; *Herzog v. Herzog,* 23 Wn. (2d) 382, 161 P. (2d) 142; *Schumacher v. Schumacher,* 26 Wn. (2d) 23, 172 P. (2d) 841.

■ It was early decided in this state that a decree for alimony creates no lien upon the real property of the de-fendant, unless the decree fastens itself upon some par-ticular property.

In *Philbrick v. Andrews,* 8 Wash. 7, 35 Pac. 358, the re-spondent and his two minor children of his first wife lived upon lands patented to him during the life of that wife. His first wife died and he remarried, and his second wife later divorced him. The decree allowed her alimony in the amount of fifteen hundred dollars, the same to be a "lien upon the property of the said defendant." No prop-erty was mentioned or described in the decree. A judgment of fifteen hundred dollars was docketed June 19, 1891, and a general execution was issued August 15, 1891. In setting the sale aside, it was held:

"The land in question was community property of the defendant and his first wife, and upon her death one-half of it descended to their minor children. There is no ques-tion but that the court had power in the divorce action to award the half belonging to the defendant, or any part of it, to the plaintiff, or to render a judgment for a sum of money and make it a specific lien thereon which would take precedence of a homestead exemption. But to do either it was necessary that the property should have been brought before the court (*Webster v. Webster,* 2 Wash. 417, 26 Pac. 864), and the proper way to have done this was to describe it in the pleadings. *Bamford v. Bamford,* 4 Or. 30. If the property was not brought into said case by either party, the court had no jurisdiction over it and could not

dispose of it therein, nor create a specific lien thereon. It was for the plaintiff in this case to show that the facts were such as to give the court this authority, and in the absence of any showing to that effect, the judgment rendered in favor of the plaintiff therein could not be made a lien upon the defendant's property except by an execution levy, or by causing the judgment to be recorded in the office of the county auditor, under § 449, Code Proc., when, as in the case of other judgments, it would become a lien upon his real estate."

In *Stafford v. Stafford*, 18 Wn. (2d) 775, 140 P. (2d) 545, Evelyn R. Stafford obtained a decree of divorce from Morgan A. Stafford, the decree providing for the payment of one hundred dollars a month alimony. Later the husband filed a declaration of homestead on the property on which he was then living, and thereafter married his present wife. On August 2, 1941, Evelyn Stafford caused an execution to issue, based upon the unpaid balance due on the original decree, and caused such execution to be issued on the homestead property. In holding that the homestead property could not be sold to satisfy the accrued alimony payments, we said:

"It seems to us the effect of the decision in the *Philbrick* case is that a judgment for alimony does not create a specific lien on any property of the husband, unless the property is described in the decree, and the decree by its terms makes the judgment for alimony a specific lien on such property; that only where a specific lien is created may the homestead be sold to satisfy the judgment for alimony. If the judgment for alimony does not make it a specific lien on property of the husband, then the judgment does not become a lien on any property of the husband until a levy is made, in which case the right of the husband to a homestead exemption would be paramount to the lien thus created.

"*In the instant case, the decree awarding the respondent alimony did not create, and of course could not have created, a specific lien on the property here involved, as it was not acquired by appellant until after the decree was filed.*" (Italics ours.)

In *Seattle Brewing & Malting Co. v. Talley*, 59 Wash. 168, 109 Pac. 600, Averdale Talley Lacerda obtained a

divorce from her husband. The decree awarded her six hundred dollars in lieu of alimony. The property standing in the name of the defendant was decreed to be his sole and separate property, free and clear of all claims of the plaintiff. He later sold certain of that real property to the Seattle Brewing & Malting Company. Subsequently, the wife caused execution to issue on her judgment, and the execution was levied on the property theretofore sold to the brewing company.

The appellants brought an action to quiet title to the real estate and to restrain the sheriff from the threatened sale. It was there held:

"The general rule seems to be that a 'decree for alimony creates no lien upon the estate of the husband, in the absence of statutes so providing, unless the decree fastens it upon some particular property. It is a personal charge upon the husband rather than upon his estate.' 2 Am. & Eng. Ency. Law (2d ed.), p. 133. The statutes of this state do not make a decree for alimony a lien upon real estate. In *King v. Miller, supra,* [10 Wash. 274, 38 Pac. 1020] we said:

" 'Ordinarily a decree of divorce between the parties puts their property matters at rest, and should do so, but in this case an express lien was created upon the real estate in controversy for the purpose of securing the monthly allowance which was made';

thus recognizing the general rule, and also that an award of alimony may be made a lien by express order and not otherwise. . . .

"It is argued by respondent that this award of $600 in lieu of alimony is, in effect, a general judgment, and therefore became a lien upon the defendant's real estate under the statutes relating to such judgments, even though the same was not expressly made a lien by the decree. There would be some force in this argument if the court, at the time of rendering the decree, had not specifically declared that the real estate standing in the name of the defendant is 'hereby declared to be his sole and separate and individual property free and clear from all claims of the plaintiff herein of every kind and nature whatsoever.' "

■ A lien is an encumbrance which one person has upon the property of another as a security for some debt or charge. Liens have been described as follows:

"In its most general significance, a lien is a charge upon property for the payment or discharge of a debt or duty. It is a qualified right, a proprietary interest, which, in a given case, may be exercised over the property of another. It is a right which the law gives to have a debt satisfied out of a particular thing. However, it confers no general right of property or title upon the holder; on the contrary, it necessarily supposes the title to be in some other per-· son." 33 Am. Jur. 419, § 2.

"Since a judgment lien does not amount to a transfer of title, it does not destroy the seisin of the defendant, or take away his capacity to convey. Ordinarily, however, the judgment lien does operate to give the judgment creditor priority over other adverse interests subsequently acquired and precludes the subsequent disposal or encumbrance of the property from operating to prejudice the judgment creditor or to prevent a levy of execution under the judgment." 31 Am. Jur. 20, § 303.

■ Accrued judgments for unpaid alimony installments are a basis for writs of garnishment, writs of attachment, and general executions, and may be collected through contempt proceedings. But do such judgments, as they accrue, become a lien on the property of the defendant? What is it, under the statute, which creates the lien? It is the entry of the judgment, and the extent of the lien is limited to the amount of such judgment, plus interest and costs. At the time a judgment providing for future payments of alimony installments is entered, there is no debt due. There is nothing to secure. There is nothing for which a lien could come. into being. (The situation would be different, of course, if the judgment provided for alimony in a lump sum.) As the installments accrue and are unpaid, they become judgments. But such judgments do not become statutory liens.

In order to create a statutory lien, there must be a judgment for a specific amount, and it must be entered. Immediately upon its being entered, in order to secure its col-

lection, the defendant's real property is encumbered. It is then impressed with the lien. In some jurisdictions, an award of alimony is declared by statute to be a lien on the real estate of the husband in the same manner as any other money judgment. Under such statutes, a decree for periodic payments for support, or as alimony, is generally held to become a lien on the real estate of the husband. See note 79 A. L. R. 253. However, we have no such statute in this state.

In the case of *Mansfield v. Hill,* 56 Ore. 400, 107 Pac. 471, speaking on this question, the court said:

"The provision of the divorce decree for future monthly payments by defendant until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien upon his property. The very idea of a lien upon property involves certainty as to the amount, so that persons dealing with defendant, as well as defendant himself, may know how much is involved; otherwise he would be precluded from dealing with his property at all, since it would be impossible for him to pay the lien. Freeman, Judgments, § 340, says: 'There can be no lien except upon such judgments as the plaintiff is entitled to satisfy by levy upon the lands of the debtor. . . . The judgment must be for a specified sum.' To the same effect is Black, Judgments, § 407."

The question was again before the court on rehearing, *Mansfield v. Hill,* 56 Ore. 400, 108 Pac. 1007, and the court said:

"As to the question of the lien of the decree in the divorce case of *Mansfield v. Mansfield,* in the circuit court of the State of Oregon for Multnomah County, for monthly payments for the support of the children, Section 514, B. & C. Comp., cited by counsel, makes no provision for a lien, as is the case in some states; if the amount were a definite sum named in the decree, it would constitute a lien from the time it is docketed, under the terms of Section 205, B. & C. Comp., which provides that, from the date of docketing a judgment as in this chapter provided, such judgment shall be a lien upon all the real property of the defendant within the county, etc. This monthly allowance is a continuing liability, and no part of it was due when the decree

was rendered, and it may be terminated at any time, and its amount is impossible of computation. For that reason it does not come within the holding in *Taylor v. Taylor*, 47 Or. 47, (81 Pac. 367), cited by counsel, in which the amount was allowed for the support of the children in one specified sum."

■ The trial court may, in divorce decrees providing for alimony payments in installments, fasten a lien upon certain specified real property then before the court, to insure the payment of such installments. If the decree provides for the payment of alimony in a lump sum, the entry of such judgment, under the provisions of Rem. Rev. Stat., §§ 445 and 445-1, impresses a lien and encumbrance, on the real property then owned or thereafter acquired by the defendant during the life of the lien, in the amount of the judgment, plus interest and costs.

■ If the decree provides for alimony payments in installments with no specific lien attached, no lien on that judgment comes into being by virtue of Rem. Rev. Stat., §§ 445 and 445-1. A person buying real property from a defendant so situated, and paying the full purchase price therefor and receiving a deed thereto, takes said property free and clear of any claims of the plaintiff.

■ However, should the buyer purchase the property under contract of sale and go into possession of the same, and should alimony payments accrue under the divorce decree, thus becoming separate and distinct judgments, the plaintiff would have a right, under the general execution statute, to execute and levy on the interest of the defendant in said property. But this would be by virtue of the levy of execution and not because of any lien having existed under §§ 445 and 445-1.

The judgment appealed from is reversed.

MALLERY, C. J., MILLARD, SIMPSON, and ABEL, JJ., concur.