[No. 8980–3–I. Division One. December 15, 1980.]

JAMES T. DUNHAM, ET AL, *Respondents,* v. GITA M. TABB, *Appellant.*

*Douglass North* and *Hennings, Maltman, Weber & Reed,* for appellant.

*Bruce H. Hurst, Ingrid W. Hansen,* and *Betts, Patterson & Mines,* for respondents.

CALLOW, C.J.—The defendant, seeking to secure unpaid child support from real property of the father, appeals from a summary judgment quieting title to the property in the plaintiff–purchasers. We are asked to decide (1) whether the defendant's judgments against Howard Cook for unpaid child support constituted a lien on Cook's real property when Cook conveyed the property to the plaintiffs; (2) whether the defendant's claim against Howard Cook entitled her to an equitable lien on the property; and (3) whether Cook's sale of his property to the plaintiffs constituted a fraudulent conveyance.

On October 20, 1978, Gita M. Tabb obtained a judgment against Howard Cook in a paternity action. Thereafter, on November 13, 1978, a writ of execution for the amount of unpaid pregnancy costs, attorney's fees, and the first month's child support was issued. Pursuant to this writ, the sheriff levied execution on the real property at issue here, which was then owned by Howard Cook, and it was sold at sheriff's sale to a third party on December 22, 1978, satisfying the judgment. During the year period of redemption following the sheriff's execution sale, no sheriff's deed was issued and title remained in Howard Cook.

Howard Cook had departed from the United States and returned to this country in the spring of 1979. On September 5, 1979, a "motion and affidavit for a reduction of

accrued child support to judgment" was presented on behalf of Ms. Tabb to a court commissioner, but the court commissioner refused to sign the proposed judgment. On September 11, 1979, an affidavit of delinquent child support was filed in the case of Tabb v. Cook (a sealed superior court file), and on the same day a lis pendens was filed against the subject property with the county auditor. This lis pendens did not conform to the requirements of RCW 4.28.320.

Howard Cook redeemed the subject property on September 18, 1979, and on September 20, 1979, he conveyed the property by warranty deed to James and Gayle Dunham, plaintiffs herein.

On September 28, 1979, the court issued a writ of execution for unpaid installments of child support due Ms. Tabb from Howard Cook. Levy of execution was made against the subject property on October 11, 1979, and the sheriff's sale was set for November 16, 1979. The Dunhams commenced this action to quiet title to prevent the sheriff's sale, and the trial court entered summary judgment thereafter in their favor.

First, the defendant argues that her judgments against Howard Cook for unpaid child support constituted a lien on Cook's real property when he conveyed the property to the plaintiffs.

Under RCW 4.56.190–.200, a superior court judgment becomes a lien upon all the judgment debtor's real property located in that county. Accrued, unpaid alimony and child support payments, however, have received different treatment. Each unpaid installment becomes a separate judgment, bearing interest from the date due. *Roberts v. Roberts,* 69 Wn.2d 863, 866, 420 P.2d 864 (1966). Such judgments will support a writ of garnishment, *Boudwin v. Boudwin,* 159 Wash. 262, 268, 292 P. 1017 (1930), execution, *Starkey v. Starkey,* 40 Wn.2d 307, 314, 242 P.2d 1048 (1952), or attachment. These judgments, however, do not become liens on the debtor's real property unless the divorce or other decree designates a lien upon particular

property. If the decree is silent, no lien is created until levy of execution. *Stafford v. Stafford,* 18 Wn.2d 775, 785, 140 P.2d 545 (1943).

*Swanson v. Graham,* 27 Wn.2d 590, 179 P.2d 288 (1947), held that a divorce decree providing for alimony and child support installments does not create a lien on the debtor's present and after–acquired real property. In discussing the effect of accrued, unpaid installments, the court stated:

> [D]o such judgments, as they accrue, become a lien on the property of the defendant? What is it, under the statute, which creates the lien? It is the entry of the judgment, and the extent of the lien is limited to the amount of such judgment, plus interest and costs. At the time a judgment providing for future payments of alimony installments is entered, there is no debt due. There is nothing to secure. There is nothing for which a lien could come into being. (The situation would be different, of course, if the judgment provided for alimony in a lump sum.) As the installments accrue and are unpaid, they become judgments. But such judgments do not become statutory liens.
>
> In order to create a statutory lien, there must be a judgment for a specific amount, and it must be entered. Immediately upon its being entered, in order to secure its collection, the defendant's real property is encumbered. It is then impressed with the lien. In some jurisdictions, an award of alimony is declared by statute to be a lien on the real estate of the husband in the same manner as any other money judgment. Under such statutes, a decree for periodic payments for support, or as alimony, is generally held to become a lien on the real estate of the husband. . . . However, we have no such statute in this state.

(Citation omitted.) *Swanson v. Graham, supra* at 597–98. The court quoted *Mansfield v. Hill,* 56 Ore. 400, 107 P. 471, 108 P. 1007 (1910):

> The very idea of a lien upon property involves certainty as to the amount, so that persons dealing with defendant, as well as defendant himself, may know how much is involved; otherwise he would be precluded from dealing

with his property at all, since it would be impossible for him to pay the lien.

*Swanson v. Graham, supra* at 598.

We are not persuaded that we should depart from the rule of *Swanson v. Graham, supra.* The accrued, unpaid child support judgments due the defendant at no time constituted a lien on Cook's real property. Had Cook not conveyed the property to the plaintiffs in September 1979, no lien would have encumbered the property until October 11, 1979, when levy of execution was made. We hold that the plaintiffs acquired title to Cook's real property before the defendant took the action necessary to impose a lien to satisfy her judgments.

Second, the defendant argues that she is entitled to an equitable lien on the plaintiffs' real property because she recorded a lis pendens 9 days before the plaintiffs recorded their deed.

RCW 4.28.320 authorizes the filing of a lis pendens "[i]n an action affecting the title to real property". Tabb v. Cook concerned Cook's liability for child support; his real property was not the subject of the action nor was his title to the property affected by the child support order. The purpose of a lis pendens is to give "notice of the pendency of the action," RCW 4.28.320. "The statute relates to the filing of a notice of the pendency of an action, not to a judgment, and it has no relation to a title acquired after judgment." *London & San Francisco Bank, Ltd. v. Dexter Horton & Co.,* 126 F. 593, 599 (9th Cir. 1903). Final judgment in Tabb v. Cook was entered in October 1978; in September 1979, no action was pending between the parties to that suit. *See Washington Dredging & Improvement Co. v. Kinnear,* 24 Wash. 405, 406, 64 P. 522 (1901). Moreover, a lis pendens is procedural only; it does not create substantive rights in the person recording the notice. *Chaudoin v. Claypool,* 174 Wash. 608, 25 P.2d 1036 (1933); *Merrick v. Pattison,* 85 Wash. 240, 147 P. 1137 (1915). The defendant's lis pendens was not effective to create an equitable lien.

In *Northern Commercial Co. v. E.J. Hermann Co.,* 22 Wn. App. 963, 593 P.2d 1332 (1979), the court labeled as "equitable" the lien imposed on the husband's real property to secure future property settlement payments. The judgment in Tabb v. Cook did not provide for such a lien. *Webster v. Rodrick,* 64 Wn.2d 814, 394 P.2d 689 (1964), upheld an equitable lien on the defendants' homestead to secure the plaintiff's judgment for misappropriated funds, which had been used to purchase the property. Because the homestead declaration was filed before judgment, no statutory lien arose. The court would not allow the defendants to use the homestead exemption to protect property purchased with the judgment creditor's funds. It can be asserted that the plaintiffs here had constructive notice of the defendant's judgments against Cook because of the lis pendens, yet this does not approximate the fraud which justified the equitable lien in *Webster.*

 Third, the defendant argues that Cook's sale of his real property to the plaintiffs constituted a fraudulent conveyance.

RCW 19.40.070 provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Assuming that Cook had the requisite fraudulent intent when he conveyed his property to the plaintiffs, the defendant must also prove that the plaintiffs had knowledge of that intent. *Columbia Int'l Corp. v. Perry,* 54 Wn.2d 876, 878–79, 344 P.2d 509 (1959).

> But actual knowledge is not always needed. A transferee may be charged with knowledge where he is aware of facts and circumstances which are calculated to put him on inquiry, and such inquiry would have led him to discover the intent of the transferor. . . . However, there must be more than mere suspicion to charge the buyer with inquiry and knowledge of the seller's fraud. There

must be discovery of evidential facts leading to a belief in the fraud.

(Citations omitted.) *Columbia Int'l Corp. v. Perry, supra* at 879. The plaintiffs did not have actual knowledge of the defendant's claim against Cook until notice of the sheriff's sale was posted on their front door in November 1979. The defendant argues that the lis pendens was sufficient to put the plaintiffs on inquiry notice under RCW 65.08.030. That statute provides:

> An instrument in writing purporting to convey or encumber real estate or any interest therein, which has been recorded in the auditor's office of the county in which the real estate is situated, although the instrument may not have been executed and acknowledged in accordance with the law in force at the time of its execution, shall impart the same notice to third persons, from the date of recording, as if the instrument had been executed, acknowledged, and recorded, in accordance with the laws regulating the execution, acknowledgment, and recording of the instrument then in force.

RCW 65.08.030 does not apply to the defendant's lis pendens. A lis pendens does not purport "to convey or encumber real estate"; it merely gives notice of a pending action affecting title to real property. The statute is designed to render effective for notice purposes documents that are improperly executed or acknowledged. The defendant's lis pendens was not improperly executed, although it was improperly filed.

The defendant relies on *Knettle v. Knettle,* 190 Wash. 395, 68 P.2d 218 (1937), and *Armstrong v. Armstrong,* 100 Wash. 270, 170 P. 587 (1918). The *Knettle* decision set aside as fraudulent an assignment of trust income by the plaintiff's ex–husband to his secretary and later, second wife. *Armstrong* invalidated Mr. Armstrong's conveyance to his second wife of all property awarded him in the divorce decree. In addition to the close relationship between the transferor and transferee, both transferees were deemed to have knowledge of the transferor's fraudulent intent. We do

not find either decision to be authority for setting aside the conveyance to the plaintiffs under the facts here.

Finally, Howard Cook is not a party to this action. There is insufficient evidence of fraudulent intent on his part, which requires proof by "clear, cogent, and convincing evidence." *Sparkman & McLean Co. v. Derber,* 4 Wn. App. 341, 349, 481 P.2d 585 (1971).

The judgment is affirmed.

JAMES and DURHAM, JJ., concur.

Reconsideration denied January 19, 1981.

Review denied by Supreme Court March 13, 1981.