[No. 26513.   Department One.   May 19, 1937.]

MELCENA KNETTLE, *Respondent*, v. LEMYRT D. KNETTLE, *Defendant*, LEROY N. KNETTLE *et al.*, *Garnishee Defendants*, MARY MACKINNON KNETTLE *et al.*, *Appellants*.[1]

*John J. Kennett* and *Kenneth Durham,* for appellants.

*Patterson & Ross,* for respondent.

[1]Reported in 68 P. (2d) 218.

Blake, J.—On the 15th of April, 1929, an interlocutory decree of divorce was entered in favor of the plaintiff, Melcena Knettle, against the defendant, Lemyrt D. Knettle. The interlocutory decree was in all respects confirmed by final decree entered December 2, 1929. The decree awarded the custody of three children, all under six years of age, to plaintiff, and provided that defendant pay to plaintiff, for their support and maintenance,

". . . the sum of $175 per month for a period of one year from the date of the entry of this interlocutory decree . . . until the defendant shall have made twelve full payments of $175 each, and that after the expiration of said twelve months period, the defendant shall pay to the plaintiff . . . the sum of $200 per month . . ."

February 19, 1935, plaintiff sued out a writ of garnishment directed to LeRoy N. Knettle and Old National Bank and Union Trust Company, alleging in her affidavit that she had "a judgment against the defendant Lemyrt D. Knettle, in the approximate sum of $11,575." The garnishee defendants answered that, as trustees of the Nancy A. Knettle trust, they were in possession of $569.37 accruing to Lemyrt D. Knettle under the terms of the declaration of trust; that, prior to the issuance of the writ of garnishment, they had been served with notice of a purported assignment made by Lemyrt D. Knettle of all his interest in the "trust and the trust property and the accruals therefrom" to Mary MacKinnon. Disclaiming further interest, the garnishee defendants deposited in court the sum of $569.37.

Lemyrt D. Knettle answered, admitting the allegations contained in the answer of the garnishee defendants. His present wife, Mary MacKinnon Knettle, intervened and laid claim to the fund by virtue of the

assignment, executed August 1, 1932, referred to in the answer of the garnishee defendants. As to one issue presented to the trial court, she set up the defense of *res judicata*. Since, under our view of the evidence, the issue referred to becomes immaterial, it will be unnecessary to discuss this defense.

John J. Kennett also intervened, laying claim to the fund under an assignment from Mary MacKinnon Knettle. (Since his rights are wholly dependent on those of Mary MacKinnon Knettle, it will be unnecessary to again refer to him or his claims.)

February 8, 1936, plaintiff sued out another writ of garnishment directed to the same garnishee defendants, who made like answer as to the first, except as to the amount of money in their possession, which was $337.07. Disclaiming further interest, they deposited that amount in court. Mary MacKinnon Knettle and John J. Kennett intervened, presenting the same issues as to the first writ.

The issues on both writs were tried to the court, which found that "plaintiff has a judgment . . . against the defendant," which "is unsatisfied for a sum far in excess of the amount deposited in the registry of the court by the garnishee defendants;" that at all times subsequent to May 12, 1930, Lemyrt D. Knettle was delinquent in payments on the judgment; that from that date Mary MacKinnon Knettle had knowledge of the judgment and of Knettle's delinquencies in making payment, and that she had such knowledge when Knettle made to her the purported assignment of his interest in the Nancy A. Knettle trust estate; that the assignment was made by Knettle with the intent to defraud the plaintiff, and that Mary Mac-Kinnon Knettle had knowledge of such intent. Declaring the assignment fraudulent and void, the court entered judgment awarding to plaintiff the funds de-

posited by the garnishee defendants. The interveners appeal.

We may say at the outset that we think the evidence so clearly preponderates in support of the findings of the court that we shall discuss it only in so far as may be necessary to dispose of objections made by appellants to the testimony of Melcena Knettle.

The only witnesses were Mary MacKinnon Knettle, Lemyrt D. Knettle, John J. Kennett, and Melcena Knettle. The testimony of the first two was given by deposition. The testimony of Mr. Kennett was not material to the principal issue, i. e., the validity of the assignment from Lemyrt D. Knettle to Mary MacKinnon.

Melcena Knettle testified, over the objection of appellants, to the effect that, subsequent to May 12, 1930, she received only about seventy-five dollars from Lemyrt D. Knettle; that two or three times after he was delinquent, and prior to December 10, 1930, she went to his office; that Mary MacKinnon was in the employ of Mr. Knettle, and had been since prior to the entry of the interlocutory decree; that they discussed the judgment and the fact that Lemyrt was delinquent in his payments; that Mary MacKinnon advised her to satisfy the judgment, as "he [Lemyrt] would never be able to meet the payments." To this the witness replied:

"I couldn't do that for . . . that was all I had to support the three children . . . that I might be able to collect it at the termination of the trust that mother Knettle had made."

She further testified that, before Lemyrt left here in December, 1930, for California, he received six thousand dollars from his mother's estate.

Appellants challenge all this testimony of Melcena Knettle as incompetent, irrelevant, and imma-

terial. We think it highly competent, relevant, and material. This testimony, coupled with the admitted fact that Mary MacKinnon went to California in 1931, where she was closely associated with Lemyrt until she married him in 1933, to our minds thoroughly establishes the fact that Lemyrt Knettle at all times was endeavoring to escape the responsibility for the maintenance and support of his children, and that the appellant Mary MacKinnon knew this at the time the assignment was made from him to her.

And we arrive at the same conclusion as did the trial court: That the assignment was made by him with the fraudulent intent of escaping that obligation, and that Mary MacKinnon Knettle knew that that was the purpose of it. The rule stated in *Armstrong v. Armstrong,* 100 Wash. 270, 170 Pac. 587, is applicable here:

"If the grantee, at the time the contract was entered into, had knowledge, either actual or constructive, of the vendor's fraudulent intent, such conveyance is void and of no avail against the claims of the creditors of the vendor."

Taking this view of the evidence, we are left with but two questions of law to consider:

*First:* Respondent filed no bonds with the affidavits for the writs. Appellants contend that the judgment for respondent was not such as to support an application for a writ of garnishment without a bond. This contention is untenable under the rule of *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017. In that case, the court held a judgment for alimony, payable in installments, to be a money judgment, with respect to amounts past due, of such character as to sustain a writ of garnishment under subd. 3, § 680, Rem. Rev. Stat. [P. C. § 7999].

*Liebig v. Liebig,* 107 Wash. 464, 182 Pac. 605, relied

upon by appellants, is clearly distinguishable, in that the affidavit for garnishment was predicated on an indebtedness and not a judgment. In other words, the affidavit brought the application within the terms of subd. 2, § 680, Rem. Rev. Stat., to support which a bond is required under § 681, Rem. Rev. Stat. [P. C. § 8000]. In the *Boudwin* case, the *Liebig* case was discussed and so distinguished.

*Second:* Citing *Knettle v. Knettle,* 164 Wash. 468, 3 P. (2d) 133, appellants contend that the funds accruing to Lemyrt D. Knettle from the Nancy A. Knettle trust estate are not subject to garnishment, in view of the provisions of Rem. Rev. Stat., § 637 [P. C. § 7951]. The statute provides:

"This chapter does not authorize the seizure of, or other interference with any property which is expressly exempt by law from levy and sale by virtue of an execution, or any money, thing in action or other property held in trust for a judgment debtor where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor; . . . ."

In *Knettle v. Knettle, supra,* it was sought by suit in equity to establish a lien against the corpus of the Nancy A. Knettle trust estate to satisfy a judgment against Ernest W. Knettle, a *cestui.* It was there held that, in view of the provisions of Rem. Rev. Stat., § 637, the corpus of the trust estate could not be reached to satisfy the judgment. With reference to income from the trust estate which might in future accrue to the *cestui,* the court said:

"What we have already said with reference to the trust farm property, we think, calls for the reversal of the decree in so far as it awards to the plaintiff any right in the defendant Ernest W. Knettle's future accruing income from the trust farm property. The

funds so to accrue to him are not as yet even trust funds. Not now being in existence, they are, we think, not property in any sense now subject to control or adjudication in the interest of the plaintiff as a judgment creditor of the defendant Ernest W. Knettle. At what point of time, if at all, such accruing funds may be held to be in the hands of the trustees as a passive or dry trust, we need not now decide. Possibly, when, if ever, such event occurs and such accruing funds so remain in the hands of the trustees, they may be subject to garnishment in their hands in the interest of the plaintiff if her judgment be then alive and unsatisfied. To now adjudicate what right the plaintiff may have to subject to the satisfaction of her judgment any such future accruing funds, would, we think, be clearly premature."

It is clear from the foregoing quotation that neither the statute nor the decision precludes the garnishment of income in the hands of the trustees which *has accrued* and is ready for distribution to the *cestuis que trustent*. As intimated in the quotation, *accrued income*, ready for distribution to the *cestui*, constitutes a dry or passive trust, and is subject to seizure in satisfaction of his debts. 65 C. J. 555; *Wells v. Ely*, 11 N. J. Eq. 172; *Humphrey v. Gerard*, 83 Conn. 346, 77 Atl. 65; *First Nat. Bank v. Burns*, 199 S. W. (Mo. App.) 282. Funds of such character do not fall within the terms of such statutes as Rem. Rev. Stat., § 637. 65 C. J. 559; *Wells v. Ely, supra.*

Judgment affirmed.

STEINERT, C. J., MAIN, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—In the absence of a provision in the trust deed, and there being no law in this state forbidding the beneficiary of a trust like the one in the case at bar to assign his right to a future income, the *cestui que trust* may sell and transfer his right to such income. The authorities sustaining the foregoing

are numerous, but I refrain from burdening the books with such citations and quotations, as no good purpose would be served thereby.

The judgment should be reversed.