[No. 28521. Department Two. April 3, 1942.]

I. F. LAUCKS, *et al., Respondents,* v. AGNES HELEN
PRINCEHOUSE, *Appellant,* RICHARD PRINCE-
HOUSE *et al., Respondents.*[1]

[1]Reported in 124 P. (2d) 226.

*Kerr, McCord & Carey* and *Stephen V. Carey (Lawrence N. Brown,* of counsel), for appellant.

*Ogden & Ogden,* for respondents Laucks.

*Bruce Shorts, Jr.,* for respondents Princehouse.

JEFFERS, J.—This proceeding was instituted in the superior court for King county by I. F. Laucks and Helen Viola Laucks, testamentary trustees of the last will and testament of Viola A. Thompson, deceased, after the termination of the trust period provided for in the will, for the purpose of obtaining a declaration of rights of Agnes Helen Thompson (now Princehouse), and Richard Princehouse and Joan Helen Princehouse, minor children of Agnes Princehouse.

The court appointed Bruce Shorts, Jr., guardian *ad litem* of the above named minors, and Mr. Shorts, after qualifying as such guardian, filed an answer on behalf of the minors. It is unnecessary to refer to the answer of the guardian *ad litem,* other than to say that it is alleged therein, on information and belief, that prior to the expiration of the trust period, Agnes Princehouse, named as a beneficiary of one-fourth of the trust estate, had encumbered or made subject to her personal debts her expectancy or interest in the trust, in violation of subsection eight of paragraph ten of the will, and because of these acts had forfeited her right to receive any part of the trust estate.

Agnes Princehouse appeared by separate counsel, and demurred to the complaint and petition. Apparently Mrs. Princehouse also filed a motion to make paragraph VIII of the cross-complaint of the guardian *ad litem* definite and certain, by stating how and in what particulars "Agnes Helen Princehouse did en-

cumber or make subject to her personal debt her expectancy or interest in said trust, in violation of the provisions of said paragraph eight." The court ordered that the information sought by the above motion be furnished by a bill of particulars, but before furnishing the bill of particulars, the guardian *ad litem* was granted leave to file written interrogatories to be answered by Agnes Princehouse for the discovery of facts relative to matters alleged in the cross-complaint.

Pursuant to leave granted, the guardian *ad litem* did prepare and submit to Mrs. Princehouse certain interrogatories. In view of the fact that the answers to the interrogatories submitted constitute the only evidence showing the acts of Mrs. Princehouse, which it is claimed worked a forfeiture of her right to participate in the trust, we shall set out what we deem to be the material interrogatories and Mrs. Princehouse's answers thereto:

"1. What is your full name? A. Agnes Helen Princehouse.

"2. What is the date of your birth? A. May 25, 1912.

"3. Where do you reside? A. Taft, Oregon.

"4. How long have you resided at your present place of residence? A. About six (6) months.

"5. What relationship do you bear to Viola A. Thompson? A. Granddaughter.

"6. On what date did your brother, Roy Blaine Thompson, attain age 30? A. December 29, 1939.

"7. What is your husband's full name? A. Herbert Princehouse, Jr.

"8. When and where were you married? A. Port Angeles, Washington, May 18, 1935.

"9. What are the names and ages of your children? A. Richard Princehouse, age four and one-half yrs. and Joan Helen Princehouse, age two (2) years.

"10. Were you gainfully employed on the date your brother attained age 30? A. As a housewife.

"11. Were you engaged in any business for yourself on the date your brother attained age 30? A. No.

"13. In what businesses has your husband been engaged for three years immediately preceding the date your brother attained age 30? A. Electrical appliance business.

"14. What earnings has he derived from such businesses? A. I do not know.

"15. In what capacity did he act with respect to such businesses; was he an employee, owner or partner? A. Owner.

"16. What assets did you have on the date your brother attained age 30? A. A house and lot and household furniture.

"17. What was the approximate value of such assets? A. $11,000.00, against which was a mortgage in the sum of approximately $7,700.00.

"18. What was the extent of your liabilities on the date your brother attained age 30? A. About $17,000.00.

"19. What was the nature of your liabilities on the date your brother attained age 30? A. Accommodation maker on three promissory notes.

"20. Were you indebted to any one person or group of persons, or corporation, in the amount of approximately $17,000.00 on the date your brother attained age 30? A. Yes.

"21. If the answer to 20 above is 'yes' please state:

(a) the exact amount of such indebtedness. A. I do not know.

(b) the manner in which such indebtedness is or was evidenced. A. Promissory note.

(c) the terms of such indebtedness. A. I do not know except as explained below.

(d) the name of anyone who is or was jointly or severally liable with you upon such indebtedness. A. Herbert Princehouse, Jr.

(e) the name of the firm, person or persons to whom such indebtedness is or was owing. A. Nelson Brothers, Inc., W. M. Dodd.

(f) the security, if any, given for such obligation. A. Nelson Brothers, Inc., were given a chattel mortgage, electrical appliances and a conditional sales

contract as security. W. M. Dodd was given several conditional sales contracts as security.

(g) the time such indebtedness was incurred. A. Between 1½ and 2 years ago.

(h) the consideration for such indebtedness. A. An extension of time to Herbert Princehouse, Jr., to pay indebtedness.

(i) the circumstances surrounding the incurring of such indebtedness. A. Requested to sign by my husband.

"22. Have you, by any writing signed by you, agreed to subject your interest in the trust created by the will of Viola A. Thompson to the payment of any indebtedness owed by you? A. No.

"24. Have you orally agreed to make payment of any indebtedness owed by you from the funds or property which may be received by you from the trustees under the will of Viola A. Thompson upon final distribution of said trust? A. No.

"26. Have you at any time exhibited a copy of the will of Viola A. Thompson to any creditor or prospective creditor of yours? A. No.

"27. Has any creditor or prospective creditor of yours, to your knoweldge, seen a copy of the will of Viola A. Thompson? A. I do not know."

Mrs. Princehouse, in further answer to the interrogatories submitted, and in explanation of some of her answers, stated:

"As stated in the foregoing answer to interrogatory 13, my husband has been engaged in the electrical appliance business at the stated place since the stated date, and in connection with the operation of said business, became indebted to the creditors named in the answer to interrogatory 21-e. These creditors, as I understand, desired that the amount of their indebtedness be definitely fixed and acknowledged and the time of payment fixed. They, however, being willing to extend the time of payment sufficiently to permit my husband to continue in business and to enable the business to pay off the indebtedness.

"Upon this situation being explained to me by my husband, I, at his request, joined with him in giving

the notes aggregating $17,000, more or less, described above and secured as above stated. Neither at the time of signing said notes nor at any other time have I ever attempted to encumber my interest in the trust created by the will of my grandmother, nor make said interest subject to personal debts, nor have I mortgaged my interest therein or conveyed it, nor consented to the rendition of any judgment against me or against my said interest, and no judgment by consent or otherwise has been taken by any creditor nor, so far as I know, is any proceeding looking to the taking of any judgment threatened."

The answers to the above interrogatories were signed by Agnes Princehouse on November 5, 1940. On December 10, 1940, all of the parties to this proceeding stipulated that the following facts should be considered by the court as the facts in the case: The copy of the last will and testament of Viola A. Thompson, deceased, attached to the complaint as exhibit B, is a true and correct copy of such last will and testament. The copy of the decree of distribution entered in the estate of Viola A. Thompson, deceased, attached to the complaint as exhibit A, is a true and correct copy of such decree of distribution. Viola A. Thompson died on December 22, 1921, and her estate was duly and regularly probated in the superior court for King county, in probate cause No. 29994, the decree of distribution being entered on June 21, 1934. I. F. Laucks and Helen Viola Laucks now are, and at all times since June 21, 1934, have been, acting as testamentary trustees under the will of decedent. Defendant Agnes Helen Princehouse is one of the beneficiaries under the will (she being described in the will as Agnes Helen Thompson), and the minor defendants, Richard Princehouse and Joan Helen Princehouse, are the living issue of defendant Agnes Helen Princehouse. All matters disclosed by the interrogatories propounded to, and an-

swered by, defendant Agnes Helen Princehouse are true and correct.

The will to which reference has been made, after making certain specific bequests, devised the residue of the testator's property to Helen Viola Laucks, a daughter, and to I. F. Laucks, husband of Helen Laucks, as trustees for the benefit of Helen Viola Laucks, Roy Blaine Thompson, a grandson, and Agnes Helen Thompson (now Princehouse), a granddaughter.

Subsection four of paragraph ten of the will provides that the trustees shall pay to Roy Blaine Thompson and Agnes Helen Thompson (Princehouse) certain specified monthly sums from the net income of the trust, until the termination thereof.

Subsection five of paragraph ten provides that the trust shall terminate when Roy Blaine Thompson shall have reached the age of thirty years, at which time there shall be a final distribution of the trust estate, and at which time one-fourth of the corpus of the trust estate shall be distributed to Roy Blaine Thompson and one-fourth to Agnes Helen Thompson (Princehouse). However, there is another provision of the will, found in subsection eight of paragraph ten, which deals with the right of the beneficiaries named in the will to receive, and is the particular part of the will involved in this proceeding. Subsection eight of paragraph ten provides:

"It is my intent and direction that the trust shall be in no way encumbered or made subject to the personal debts of the beneficiaries, and if any beneficiary shall attempt to mortgage, or otherwise encumber, or convey his or her expectancy, or permit a judgment to be rendered that might be asserted against the property if owned by the beneficiary, then I direct that such offending beneficiary take nothing, and the share of such trust that would have otherwise been conveyed to such beneficiary by my trustees upon the termina-

tion of the trust period, be conveyed to the living issue of such beneficiary, if any, and if there be no such issue that such share fall into the body of the trust, and be distributed to the remaining beneficiaries in the proportions: one-half to child, if competent to take, and the remainder to grandchildren, share and share alike."

The trial court, after a consideration of the stipulated facts and the will of Mrs. Thompson, especially subsection eight of paragraph ten, found that Mrs. Princehouse had, on or before December 29, 1939 (the date of the termination of the trust), disqualified herself from taking any interest in the trust estate, and the court therefore decided that the one-fourth interest which would have gone to Mrs. Princehouse be distributed to the two minor children of Mrs. Princehouse, namely, Richard Princehouse and Joan Helen Princehouse.

Mrs. Princehouse has appealed from the judgment denying her the right to participate in the trust estate.

Appellant makes the following assignments of error:

"1. The trial court erred in making findings in the form of recitals in the decree not supported by the evidence, in that (a) there is no evidence to support the recital that the indebtedness was past due on December 29, 1939, and could be reduced to judgment at any time, (b) there is no evidence to support the recital that there was no prospect of said indebtedness being paid except out of Mrs. Princehouse's prospective share of the trust estate, and (c) there is no evidence to support the recital in the decree that during the life of the trust, Agnes Helen Princehouse encumbered her expectancy and made it subject to personal debts.

"2. The trial court erred in decreeing that Agnes Helen Princehouse had forfeited her one-fourth interest in the trust estate created by the last will and testament of Viola A. Thompson, deceased.

"3. The trial court erred in charging against said

one-fourth interest the costs and attorney's fees awarded to Bruce Shorts, Jr., as guardian *ad litem* and attorney for the minor defendants, Richard Princehouse and Joan Helen Princehouse."

It is, and at all times was, the theory of Mrs. Princehouse that under the provisions of the will she was entitled to have distributed to her at the termination of the trust a one-fourth interest "of the body of the trust estate," unless she had, during the trust period, done or permitted to be done some one or all of the acts set out in subsection eight of paragraph ten, to wit, attempted to mortgage, or otherwise encumber, or convey her expectancy, or had permitted a judgment to be rendered against her, which might be asserted against her share of the trust estate; that, not having done any of the prohibited acts, she has not forfeited her right to participate in the trust.

Mr. and Mrs. Laucks, as trustees, filed a brief herein. They do not assume to take a partisan interest in this appeal, although it is their opinion that Mrs. Princehouse has, by her acts, forfeited her right to participate in the trust, and they have refused to make distribution to her until ordered by the court so to do. Their theory of the interpretation to be placed upon the will and the acts of Mrs. Princehouse are in effect the same as those of the guardian *ad litem*. We shall therefore hereafter refer to the contentions made by the guardian *ad litem,* who has filed a separate brief herein.

The guardian *ad litem,* on page fourteen of his brief, states:

"More specifically what did the trustor mean when she said that the interest of a beneficiary in the trust should not be made '*subject to*' personal debts of the beneficiary?"

The guardian then goes on to set out the various meanings of the term "subject to," and finally, on page eighteen, states:

"Thus it clearly appears that the trustor, in conformity with her general intent specifically intended that the trust property should in no manner be made available to a beneficiary to be used for the payment of debts of such beneficiary,"

and continuing:

"What did the trustor mean when she said that a beneficiary should 'not mortgage, or otherwise encumber' his or her expectancy?"

He then proceeds to give various definitions of the word "encumber," and finally, on page twenty-three, states:

"How does all of the foregoing concern us here? What has Agnes Helen Princehouse done which causes us to insist that she has forfeited her interest in this trust? She has *incurred an indebtedness* which she cannot pay unless she gets her interest in the trust. Within the meaning of the will, and contrary to the intent of the trustor, *she has attempted to encumber her expectancy.* Certainly we are entitled to infer that the holders of the notes which she has signed are going to look to her for payment of those notes."

It is apparent from the above statement of the guardian *ad litem,* that he is not really contending that appellant has, during the trust period, mortgaged, encumbered, or sold her expectancy in the trust estate, or suffered a judgment to be rendered against her, but what he seems to be fearful of is that, after distribution to appellant of her share of the trust, it will be subjected to the payment of the obligations incurred by her. With this thought in mind, he seeks to have a construction placed upon the will which would prohibit appellant from participating in the trust, on an assumption that the obligations incurred by her must of necessity be paid from what she may receive from

the trust, and that thereby the interest of appellant will be diverted, contrary to the intent of the testatrix.

Respondent admits that the words "subject to" have no well defined meaning. Whatever may be the meaning of the words as used elsewhere, we are of the opinion that the intent of the testatrix as to the meaning she intended such words to have, as used in subsection eight, is explained and limited by the following words used in a subsequent part of subsection eight, to wit, attempt to mortgage or otherwise encumber, or convey her expectancy, or permit a judgment to be rendered that might be asserted against the property if owned by the beneficiary.

The above-mentioned subsection provides that the "trust" shall in no way be encumbered or made subject to the personal debts of the beneficiary, not that the property received by the benficiary on the termination of the trust may not thereafter be made subject to such debts.

In regard to the meaning of the word "encumber," we are of the opinion it has a plain and well understood legal meaning. "Encumber . . . In its legal sense, to mortgage or pledge for the payment of money." 20 C. J. 1250. We are of the opinion that, in the will in this case, the word "encumber" was used in its legal sense, as above defined.

The trial court did not specifically find that appellant had done, or permitted to be done, any of the prohibited acts set out in subsection eight, but the court did find that appellant, during the trust period, became obligated in an amount of approximately seventeen thousand dollars, by signing the notes hereinbefore referred to, and that she had no assets with which to pay such obligations; that such indebtedness was past due, and could be reduced to judgment at any time. The court then found:

"That being so indebted during the life of the trust and particularly on December 29, 1939, the defendant Agnes Helen Princehouse did, contrary to the intent and meaning of the testatrix as expressed in said last will and testament, encumber and make subject to her personal debts her expectancy in said trust."

The notes hereinbefore referred to were not admitted in evidence, and we find nothing in this record indicating whether or not such notes are past due. Neither do we find anything in the record indicating that the holders of such notes have attempted, or will attempt, to enforce payment thereof against appellant's property. Mrs. Princehouse specifically stated, and under the stipulation we are bound by her statement, that:

"Neither at the time of signing said notes nor at any other time have I ever attempted to encumber my interest in the trust created by the will of my grandmother, nor make said interest subject to personal debts, nor have I mortgaged my interest therein or conveyed it, nor consented to the rendition of any judgment against me or against my said interest, and no judgment by consent or otherwise has been taken by any creditor nor, so far as I know, is any proceeding looking to the taking of any judgment threatened."

Reference is made by appellant to Rem. Rev. Stat., § 637 [P. C. § 7951], which provides in part:

"This chapter does not authorize the seizure of, or other interference with any property which is expressly exempt by law from levy and sale by virtue of an execution, or any money, thing in action or other property held in trust for a judgment debtor where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor . . . "

Appellant also cites the cases of *Knettle v. Knettle,* 164 Wash. 468, 3 P. (2d) 133; *Knettle v. Knettle,* 190 Wash. 395, 68 P. (2d) 218; and *Knettle v. Knettle,*

197 Wash. 225, 84 P. (2d) 996. We are of the opinion that the cited cases are not very helpful in deciding the question here presented, for, as argued by respondent, the cited cases were concerned with the question of whether creditors of the beneficiary of a trust could reach the interest of such beneficiary, while in the instant case we are concerned with the question of whether, under the terms of the trust, certain acts done by the beneficiary disqualified her from taking under the trust.

While the will in question was executed in 1920, which was long after the enactment of § 637, *supra,* it was not until some years later that we had an interpretation of § 637 by the decisions in the *Knettle* cases. Those cases indicate that there was a question as to whether or not the interest of a beneficiary could be reached by a judgment creditor during the trust period, regardless of § 637. That being the situation, it seems reasonable to us that the testatrix, in order to be sure that the trust estate would be available during the trust period, for the purposes specified in the trust, and to avoid any possibility that the net income from the trust or the interest of the beneficiaries in the corpus of the trust might be subjected to the claim of some judgment creditor of the beneficiaries, and also to insure that the trustees would not be harassed or interfered with in their management of the trust estate, inserted subsection eight of paragraph ten into the will, having in mind only the prevention of the beneficiaries, during the trust period, from doing or permitting to be done certain acts which would actually divert the trust estate to purposes other than those intended, and which might hinder and prevent the trustees from carrying out the terms of the trust.

This trust was to run for a number of years, or

until Roy Blaine Thompson reached the age of thirty years, which did not occur until December 29, 1939. The trustees had many duties to perform, among them being the duty to pay to Roy Blaine Thompson and appellant each the sum of seventy-five dollars per month, from the net income, until they had, respectively, reached the age of fifteen years; one hundred dollars a month each until they attained the age of twenty-one years; and one hundred fifty dollars a month to each until the termination of the trust.

It was the intent of the testatrix, as expressed in the will, that the above funds could be used to assist in the education of her grandchildren, or to assist them in sickness, or to establish them in business when they had attained years of discretion. In other words, as we read the will, it was the intent of the testatrix to place a limitation upon the interests of these beneficiaries until they had reached an age of discretion, which we think the testatrix determined would be when Roy Blaine Thompson attained the age of thirty years.

We are clearly of the opinion that the testatrix had a perfect right to place a restraint upon the alienation or attempted alienation of the trust estate, as was done in this case. Whatever may have been the early rule in England relative to "spendthrift trusts," so-called, we are satisfied that a provision such as found in subsection eight of paragraph ten is a valid limitation.

We call attention to one of the early leading cases in the United States, holding that such limitations are valid. *Nichols v. Eaton,* 91 U. S. 716, 23 L. Ed. 254. We are of the opinion that the case of *Knettle v. Knettle,* 197 Wash. 225, 84 P. (2d) 996, in effect recognized the validity of a provision in a will against the

voluntary or involuntary transfer or encumbrance of the beneficiary's interest in the trust estate.

It is apparent that respondents and the trial court attempted to so construe the acts of appellant in obligating herself on certain notes, as to bring those acts within the prohibition of the will, on the theory that such acts were contrary to the intent, not the plain and customary meaning, of the language used.

■ For the reasons herein assigned, we are clearly of the opinion that it cannot be held in this case that appellant has attempted to mortgage or otherwise encumber her expectancy, or that she has conveyed the same, or that she has permitted a judgment to be rendered against her which might be asserted against her share of the trust estate, during the trust period, without reading into the record and giving to the language employed a meaning which is not justified by the words used.

While we have based our decision herein on the language of the will itself, our conclusion that the limitation found in subsection eight applies only to the trust period is to some extent sustained by the case of *Miles v. Miles,* 120 Neb. 436, 233 N. W. 249, wherein a stronger limitation was placed upon the right of the beneficiaries than is found in the instant case.

■ In the judgment, the court allowed costs in the sum of $5.50, and the sum of six hundred dollars as compensation to the guardian *ad litem* of the minors, and ordered that such costs and compensation be paid from the one-fourth interest of appellant. In view of the conclusion reached by us, we are of the opinion the court erred in ordering such payments to be made from such one-fourth interest. In our opinion, such costs and compensation should be paid from the whole trust estate before distribution, and not from the one-fourth interest of appellant.

The judgment of the trial court is reversed and remanded, with instructions to enter a decree in favor of appellant, in accordance herewith.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 124 P. (2d) 215.