266 P.3d 211 (2011)
173 Wash.2d 40
BANK OF AMERICA, N.A., a national, association, Petitioner,
v.
J'Amy Lyn OWENS, an unmarried person, Defendant,
Kenneth Treiger, a married person as to his separate estate, Respondent,
Shulkin, Hutton, Inc., P.S., a Washington professional corporation; and Edmund John Wood, Defendants.
No. 84044-0.
Supreme Court of Washington, En Banc.
Argued January 11, 2011.
Decided October 27, 2011.
*212 Thomas Scott Linde, Schweet Rieke & Linde PLLC, Katie a Axtell, Bishop White Marshall & Weibel, P.S., Seattle, WA, for Petitioner.
Edmund John Wood, Wood & Jones, PS, Seattle, WA, for Defendant.
Jerry Richard Kimball, Attorney at Law, Catherine Wright Smith, Valerie A. Villacin, Smith Goodfriend, PS, Seattle, WA, for Respondent.
Robert Walton Sargeant, Daniel W. Ferm, Williams, Kastner & Gibbs, PLLC, Larry Eugene Leggett, Attorney at Law, Seattle, WA, amicus counsel for Washington Land Title Association.
OWENS, J.
¶ 1 As part of the distribution of property following the dissolution of Kenneth Treiger and J'Amy Lyn Owens' marriage, a home belonging to Owens (the Maplewood property) was sold, and, pursuant to a trust agreement, the proceeds were deposited in a trust account. Bank of America NA (the Bank), which had obtained a writ of attachment on the Maplewood property, filed this declaratory judgment action to determine each party's rights to the proceeds.
¶ 2 There are two issues before us on review. First, we are called upon to determine whether the "Supplemental Decree of Dissolution" (Supplemental Decree) established a lien on the Maplewood property in favor of Treiger. Second, we must determine *213 whether various documents are valid judgments. We conclude that the Supplemental Decree established an equitable lien on the Maplewood property in favor of Treiger in the amount of one-half of the proceeds of the court-ordered sale of the property. We further conclude that Documents 1375 and 1376[1] are valid judgments entitling Treiger to further awards but that Document 1370 was properly not given separate effect. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals.

FACTS
¶ 3 In July 1997, Treiger and Owens married. During their marriage, Owens personally guaranteed a promissory note and borrowing agreement for The Retail Group, a business of which she was a part owner. Treiger and Owens separated on June 1, 2000, and, in February 2001, they filed for dissolution of their marriage in King County Superior Court. In the winter of 2002, first Treiger and then Owens filed for bankruptcy. On June 19, 2002, the superior court entered a decree of dissolution but reserved final resolution of the property and debt issues until the conclusion of the bankruptcy proceedings.
¶ 4 Between the date of separation and the entry of a decree of dissolution, Owens purchased the Maplewood property. The bankruptcy court determined that this property was community property, and, in April 2004, the trustee of Treiger's estate executed a quitclaim deed to Owens in exchange for a payment $215,000. On March 21, 2005, Treiger's bankruptcy case was closed; on July 5, 2005, Owens' bankruptcy case was dismissed.
¶ 5 Following the conclusion of the bankruptcy cases, Owens and Treiger returned to King County Superior Court to complete the property distribution under the dissolution. During these proceedings, the court issued several orders relevant here. On March 21, 2006, the court entered the "Order on Pretrial Motion" (Document 1370), which awarded Treiger $3,200 in fees and sanctions based on Owens' failure to appear in response to a subpoena. On March 29, 2006, the court entered its "Order on Attorney's Fees" (Document 1371), awarding Treiger $1,429 in attorney fees and costs based on the necessity of bringing a motion in limine and a motion to compel. On May 9, 2006, the court entered the Supplemental Decree. The Supplemental Decree divided the property and liabilities, both community and separate, between the parties in a manner it determined to be fair and equitable. Two specific features of the Supplemental Decree are relevant here. First, it awards $27,501.42 to Treiger, which expressly includes the amounts listed in Documents 1370 and 1371. Second, the Supplemental Decree orders the sale of the Maplewood property and awards to Treiger "[o]ne half proceeds of the sale of the [Maplewood property]." Clerk's Papers (CP) at 16. An addendum, incorporated in the Supplemental Decree by reference, clarified that this was one-half of the net proceeds of the sale.
¶ 6 On June 9, 2006, through the "Order on Motion for Attorneys Fees" (Document 1373), Treiger was awarded $16,018 in attorney fees "in the form of a judgment" from Owens' share of proceeds from the sale of the Maplewood property. CP at 27. Three days later, on June 12, 2006, the "Order on Show Cause Re Contempt/Judgment" (Document 1374) awarded Treiger an additional $5,778 from Owens' share of the proceeds of the sale of the Maplewood property based on her failure to comply with the commissioner's ruling that she stay in court until she signed the required paperwork. The court also imposed a fine of $2,500 per day until Owens signed the listing agreement. On July 18, 2006, in its "Order Requiring Appellant to File Complete Report of Proceedings" (Document 1375), the court ordered Owens to make arrangements for a complete report of trial proceedings and, after determining Treiger's need and Owens' ability to pay, ordered Owens to pay Treiger $3,750 in attorney fees.
¶ 7 The final document from the dissolution proceedings that is relevant on review is *214 the August 28, 2006, "Order Regarding Closing of Sale of Real Property Located at 10263 Maplewood Pl. S.W., Seattle and Distribution of Proceeds" (Document 1376). Document 1376 gave Treiger the authority to sign in place of Owens to close the sale on the Maplewood property. Further, it set forth a final determination of how the proceeds of the Maplewood property were to be disbursed. In doing so, it implemented the Supplemental Decree and various prior awards and granted Treiger additional awards of attorney fees and costs. Ultimately, the sale of the Maplewood property did not occur pursuant to the sale agreement referenced in Document 1376; the sale was completed to another buyer later in 2007.
¶ 8 On October 27, 2006, Treiger recorded seven orders from the dissolution proceedings with the King County auditor. In addition to recording the Supplemental Decree (i.e., Document 1372), Treiger also recorded Documents 1370, 1371, 1373, 1374, 1375, and 1376.
¶ 9 At some point prior to completion of the bankruptcy and dissolution proceedings, The Retail Group defaulted on its promissory note and borrowing agreement with the Bank. In July 2006, the Bank filed an action in King County Superior Court to collect on Owens' debt. On December 14, 2006, the court entered an order directing issuance of a prejudgment writ of attachment on Owens' interest in the Maplewood property. On December 19, 2006, the King County Superior Court clerk issued the writ of attachment, and the Bank recorded it on December 20, 2006. On December 14, 2007, the Bank obtained a judgment against Owens for $593,519.24.
¶ 10 The bankruptcy, dissolution, and debt collection proceedings gave rise to several conflicting claims that complicated the sale of the Maplewood property by preventing the parties from obtaining title insurance. The Bank, Treiger, Owens, Owens' attorney, and an independent trustee entered into an agreement (Trust Agreement) to obtain title insurance and facilitate the Maplewood property sale. The Maplewood property sold in May 2007. On May 20, 2007, pursuant to the Trust Agreement, the title insurance company wired the net proceeds of the sale ($1,114,054.83) to the specified trust account.
¶ 11 Upon deposit of the net proceeds into the trust account, the Bank filed this declaratory judgment action to determine the priority of the parties' interest in the funds held in trust. Owens, Treiger, and the Bank all filed motions for summary judgment. The trial court determined that the Supplemental Decree did not grant Treiger a lien or any other interest in the Maplewood property and granted the Bank's summary judgment motion, ordering the following distribution of the proceeds:
1. Payment of Owens' homestead exemption in the amount of $40,000;
2. Payment to Treiger of Documents 1371 ($1,429), Document 1373 ($16,081), Document 1374 ($8,278), and the money judgments included in the Supplemental Decree ($27,501.42), plus interest on each;
3. Payment of the Bank's judgment ($593,519.24), plus interest;
4. Payment to Treiger of four judgments entered in 2007 ($56,408.62);
5. Payment to Treiger and Owens of additional amounts in accordance with the Supplemental Decree.
Treiger appealed from the summary judgment order.
¶ 12 The Court of Appeals affirmed in part and reversed in part. Bank of Am., NA v. Owens, 153 Wash.App. 115, 131-32, 221 P.3d 917 (2009). The Court of Appeals determined that the Supplemental Decree created a lien on one-half of the net proceeds of the sale of the Maplewood property and held that the trial court erred in failing to grant priority to Treiger's lien. Id. at 124-25, 221 P.3d 917. The Court of Appeals further determined that the trial court erred in failing to recognize that Document 1376 is a judgment. Id. at 131, 221 P.3d 917. However, the Court of Appeals affirmed the trial court's determination that Documents 1370 and 1375 are not judgments.[2]Id. at 126, 221 P.3d 917.
*215 ¶ 13 The Bank petitioned this court for review, and Treiger cross-petitioned. We granted review. Bank of Am., NA v. Owens, 168 Wash.2d 1039, 233 P.3d 888 (2010).

ISSUES
¶ 14 1. Did the Supplemental Decree establish a lien on the Maplewood property for Treiger's half of the net proceeds of its sale?
¶ 15 2. Are Documents 1370, 1375, and 1376 valid judgments?

ANALYSIS

I. Standard of Review

¶ 16 "A grant of summary judgment is reviewed de novo." Federal Way Sch. Dist. No. 210 v. State, 167 Wash.2d 514, 523, 219 P.3d 941 (2009). "We view the facts and all reasonable inferences in the light most favorable to the nonmoving parties." Id. The proper interpretation of a statute is a question of law, which we review de novo. In re Pers. Restraint of Cruze, 169 Wash.2d 422, 426, 237 P.3d 274 (2010). A court should grant a motion for summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c); Federal Way Sch. Dist., 167 Wash.2d at 523, 219 P.3d 941.

II. The Supplemental Decree Established a Lien in Favor of Treiger for One-Half of the Net Proceeds

¶ 17 The Bank concedes, as it must, that the Supplemental Decree is a judgment. Suppl. Br. of Pet'r at 4 (citing RCW 26.09.010(5)). The Bank further concedes that the Supplemental Decree created a statutory lien on Owens' real estate, including the Maplewood property, in the amount of $27,501.42. However, the Bank contends that the award to Treiger of one-half of the net proceeds of the sale of the Maplewood property did not create a lien interest in the property because the amount was not a sum certain and the Supplemental Decree did not include an express lien. We hold that the Supplemental Decree created an equitable lien on the Maplewood property.
¶ 18 A judgment may create either a statutory lien or an equitable lien on the judgment debtor's property. Under RCW 4.56.190, "[t]he real estate of any judgment debtor, and such as the judgment debtor may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the . . . superior court . . . of this state." Our case law makes clear that, in order to create a statutory lien, the monetary award must be for a sum certain. See, e.g., Swanson v. Graham, 27 Wash.2d 590, 597, 179 P.2d 288 (1947) ("In order to create a statutory lien, there must be a judgment for a specific amount."). Where a statutory lien is unavailable, a court may also create an equitable lien. Id. at 599, 179 P.2d 288. Such an order must be express. Seattle Brewing & Malting Co. v. Talley, 59 Wash. 168, 170, 109 P. 600 (1910). In order to be express, the court must fasten the debt to real property that is before the court and specifically identified. Swanson, 27 Wash.2d at 599, 179 P.2d 288; cf. Philbrick v. Andrews, 8 Wash. 7, 7, 9, 35 P. 358 (1894) (holding that an order imposing "a `lien upon the property'" of a defendant did not create an equitable lien because it did not identify particular property). In determining whether the trial court created an equitable lien on a parcel of real estate, we look to the actual language of the judgment, read in its context and entirety. While helpful, the term "lien" is not required where the court's intent is clear.
¶ 19 In the present case, the Supplemental Decree created an equitable lien on the Maplewood property. The Supplemental Decree's award to Treiger of one-half of the net proceeds of the sale of the Maplewood property did not include a sum certain. As such, it did not create a statutory lien for that award.[3] However, the Supplemental Decree *216 specifically identified the Maplewood property, including its tax parcel number, and fastened Treiger's award to that property. As a result, the Supplemental Decree created an equitable lien on the Maplewood property in favor of Treiger for one-half of the net proceeds of its sale. Because the Supplemental Decree was entered and recorded prior to the Bank's prejudgment writ of attachment, Treiger's lien has priority. See Hollenbeck v. City of Seattle, 136 Wash. 508, 514, 240 P. 916 (1925); cf. RCW 6.13.090 (requiring that a judgment be recorded in order to create a lien on the value of a homestead property).

III. Documents 1375 and 1376 Are Valid Judgments Entitled to Priority; Document 1370 Is Not

¶ 20 The last issue before us concerns whether various documents are judgments. The Bank petitioned for review of the Court of Appeals conclusion that Document 1376 is a judgment; Treiger appeals from the Court of Appeals conclusion that Documents 1370 and 1375 are not judgments. We affirm the Court of Appeals with respect to Documents 1370 and 1376 and reverse with respect to Document 1375.
¶ 21 "A judgment is the final determination of the rights of the parties in the action." CR 54(a)(1). This definition has persisted, by statute and court rule, since territorial days. Reif v. LaFollette, 19 Wash.2d 366, 369, 142 P.2d 1015 (1943). A judgment must be in writing and signed by the judge, CR 54(a)(1), but "need not be in any particular form," State ex rel. Lynch v. Pettijohn, 34 Wash.2d 437, 446, 209 P.2d 320 (1949). Whether an order constitutes a judgment is determined by whether it finally disposes of a case and was intended to do so. See id.; see also 14A Karl B. Tegland, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:1, at 475-76 (2d ed.2009).
¶ 22 Regardless of whether Document 1370 is a judgment, it was incorporated into the Supplemental Decree. Treiger is not entitled to a double recovery on this award, even were it a judgment.[4] As such, the trial court appropriately declined to give Document 1370 separate effect.
¶ 23 Document 1375 is a judgment. It awards Treiger $3,750 in attorney fees after finding that Treiger has need for his fees to be paid and that Owens has the ability to pay them. This is an award of temporary attorney fees or suit money, as authorized by RCW 26.12.190. We have long held that such an order is a final judgment. State ex rel. Taylor v. Superior Court, 151 Wash. 568, 572, 276 P. 866 (1929).
¶ 24 Document 1376 is also a judgment. Document 1376 sets forth, with specificity, a final determination of how proceeds from the sale of the Maplewood property are to be distributed.[5] The distribution largely recites the awards set forth in the Supplemental Decree: it defines those costs to be deducted from the gross proceeds to determine the net proceeds, awards Treiger his 50 percent of the net proceeds immediately, and then provides for the order of distribution from Owens' share of the net proceeds. Document 1376 also includes various awards from Owens' share of the net proceeds to Treiger, including prior judgments, sanctions for contempt, and attorney fees and costs. All remaining proceeds are payable to Owens, but must first "be placed in a blocked, interest bearing account" from which funds may only be released by court order. CP at 44. In other words, Document 1376 finally determines the rights of the parties to the *217 proceeds of the Maplewood property and is a judgment.
¶ 25 The Bank argues that Documents 1375 and 1376 are not effective judgments because they lack the judgment summaries required by RCW 4.64.030. That statute provides, in relevant part, as follows:
(1) The clerk shall enter all judgments in the execution docket, subject to the direction of the court and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action.
(2)(a) On the first page of each judgment which provides for the payment of money . . . the following shall be succinctly summarized: The judgment creditor and the name of his or her attorney, the judgment debtor, the amount of the judgment, the interest owed to the date of the judgment, and the total of the taxable costs and attorney fees, if known at the time of the entry of the judgment. . . .
. . . .
(3) If the attorney fees and costs are not included in the judgment, they shall be summarized in the cost bill when filed. The clerk may not enter a judgment, and a judgment does not take effect, until the judgment has a summary in compliance with this section.

RCW 4.64.030 (emphasis added). The Bank seizes upon the italicized portion of the statute to argue that a judgment that lacks a judgment summary is not a valid judgment and, as such, cannot create a lien. This requires that we interpret the statute.
¶ 26 When interpreting a statute, our objective is to give effect to the intent of the legislature. Bowie v. Dep't of Revenue, 171 Wash.2d 1, 10, 248 P.3d 504 (2011). We begin by attempting to discern the statute's plain meaning. Id. In determining the plain meaning of a statute, we consider "the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Christensen v. Ellsworth, 162 Wash.2d 365, 373, 173 P.3d 228 (2007). We attempt to harmonize apparently contradictory statutes prior to resorting to canons of construction that give preference to one statute over another. See Wark v. Wash. Nat'l Guard, 87 Wash.2d 864, 867, 557 P.2d 844 (1976).
¶ 27 In the first subsection of RCW 4.64.030, the legislature states that "[t]he clerk shall enter all judgments in the execution docket, subject to the direction of the court and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action." (Emphasis added.) This subsection makes clear that the legislature is using the term "enter" to mean placement of a judgment in a specific record. Importantly, this is different from the general usage of the term "entry of judgment." In general, the legislature uses this term to indicate the point at which the judgment is entered into the "`official records of the court,'" Tegland, supra, § 35.6, at 480, and becomes effective. See, e.g., RCW 6.01.020. In this respect, judgments are "entered," and take effect, upon delivery to the clerk's office. Id.; CR 58(b). In RCW 4.64.030, however, the legislature has used the term "enter" to mean the more specific act of recording the judgment in the execution docket. This is undeniably clear in RCW 4.64.030(1), and where similar words are used in different parts of the same statute we presume the words are given the same meaning. Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 722, 748 P.2d 597 (1988). Thus, when RCW 4.64.030(3) states that a "clerk may not enter a judgment, and a judgment does not take effect, until the judgment has a summary in compliance with this section," we read this together with RCW 4.64.030(1) to mean that a clerk may not enter a judgment in the execution docket, and the judgment does not take effect for purposes of the execution docket, until a proper summary exists.[6] This reading also reconciles RCW 4.64.030(3) with RCW 6.01.020 and CR 58(b), which provide that a judgment is entered upon delivery to the clerk's office.
*218 ¶ 28 Documents 1375 and 1376 did not include judgment summaries and were not entered in the execution docket. Nonetheless, they are valid judgments and, as such, created statutory judgment liens on Owens' real estate for the additional sum certain awards that they contained.

CONCLUSION
¶ 29 We conclude that the Supplemental Decree created, in favor of Treiger, an equitable lien against the Maplewood property in the amount of one-half of the net proceeds of its sale. We further conclude that Documents 1375 and 1376 are valid judgments that created statutory liens on Owens' real estate, including the Maplewood property, for the additional sum certain awards they contained. We remand this case to the superior court for further proceedings consistent with this opinion.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, MARY E. FAIRHURST, DEBRA L. STEPHENS and CHARLES K. WIGGINS, Justices.
J.M. JOHNSON, J. (dissenting in part).
¶ 30 I join the majority in holding the "Supplemental Decree of Dissolution" entitled Kenneth Treiger to one-half of the proceeds of the Maplewood property sale before satisfaction of Bank of America's lien. I dissent in part because I would also hold that under RCW 4.64.030(3), a judgment that fails to contain the summary required by RCW 4.64.030 lacks legal effect. Documents 1375 and 1376 do not comply.
¶ 31 As the majority accurately recognizes, a judgment is typically "entered" and effective from the time it is delivered to the clerk for filing. CR 58(b). The majority fails to acknowledge this general rule has specified exceptions. Under RCW 4.64.030(3), the effective date of a judgment is delayed if the written judgment does not contain a summary as required by the statute: "The clerk may not enter a judgment, and the judgment does not take effect, until the judgment has a summary in compliance with this section." RCW 4.64.030(3) (emphasis added). The majority holds Documents 1375 and 1376, which lack the statutorily required summaries, are valid judgments in spite of the clear language of this statute. I dissent because honoring the statute's plain meaning requires holding Documents 1375 and 1376 never took effect as judgments.
¶ 32 In reaching its conclusion, the majority purports to follow established rules of statutory interpretation. Majority at 13. First and foremost, the process of statutory interpretation requires examination of the plain meaning of the text. Bowie v. Dep't of Revenue, 171 Wash.2d 1, 10, 248 P.3d 504 (2011). The majority cites this proposition, and then adds language to the text of a statute adopted by the legislature. The majority concludes RCW 4.64.030(3) must be read as follows: "a clerk may not enter a judgment in the execution docket, and the judgment does not take effect for purposes of the execution docket, until a proper summary exists." Majority at 15. By adding language to the statute, the majority disregards the cardinal canon of statutory interpretation: "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). By its terms, RCW 4.64.030(3) provides that a judgment does not become effective until it contains the statutorily required summary. No additional text is needed to reach this conclusion, and only the legislature can amend the statute.
¶ 33 The majority focuses on RCW 4.64.030(1), which provides: "The clerk shall enter all judgments in the execution docket subject to the direction of the court. . . ." The majority claims a similar reference to the execution docket is necessary to interpret subsection (3). This reading may appear logical in relation to the directive, "the clerk may not enter a judgment . . . until the judgment has a summary." RCW 4.64.030(3). This reading implies the clerk will not enter a judgment in the execution docket until it contains a summary. Yet, the majority's reasoning unravels as it continues: ". . . and the judgment does not take effect *219 for purposes of the execution docket, until a proper summary exists." Majority at 15 (boldface added). This reading makes little conceptual sense.
¶ 34 The execution docket is a public record maintained by the county clerk that includes judgments, abstracts, and transcripts of judgments. RCW 4.64.060. The docket is kept open during business hours for members of the public who wish to inspect it. Id. Considering this context, the majority offers no explanation as to what "effect" a judgment may have in relation to the execution docket that is distinct from the binding effect of the judgment itself. A judgment "takes effect" when it disposes of a judicial action and determines the rights of the parties before the court. See Reif v. LaFollette, 19 Wash.2d 366, 369, 142 P.2d 1015 (1943) (quoting Rem.Rev.Stat. § 404). A judgment does not have a separate legal effect when placed on the execution docket for public inspection. Thus, the majority's reading renders the phrase "judgment does not take effect" in RCW 4.64.030(3) superfluous. It is a well-established canon of statutory construction that a court should avoid interpretations of a statute that render certain provisions superfluous. See Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous."). The majority abandons this recognized guidepost of statutory interpretation.
¶ 35 The majority also asserts its reading reconciles RCW 4.64.030(3) with RCW 6.01.020. Majority at 15. In actuality, the majority's reading gives priority to the latter statute, a statute worded in terms more general than those of RCW 4.64.030(3). See RCW 6.01.020 ("a judgment of a superior court is entered when it is delivered to the clerk's office for filing"). When facing a conflict, we should "give preference to the more specific and more recently enacted statute." Tunstall v. Bergeson, 141 Wash.2d 201, 211, 5 P.3d 691 (2000), cert. denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001). The majority's reading does just the opposite.
¶ 36 In the legislature's statutory scheme, chapter 6.01 RCW lays out general provisions and definitions. Among these provisions, RCW 6.01.020 generally describes what constitutes an entered judgment. With greater specificity than these general provisions, chapter 4.64 RCW promulgates the detailed requirements of entering a judgment. RCW 4.64.030 is among these provisions. Under our rules of construction, RCW 4.64.030(3) must receive interpretive priority over RCW 6.01.020 to carry out the legislature's intent. In enacting RCW 4.64.030(3), the legislature intended to provide a powerful incentive for the parties to submit accurate judgment summaries to assist the clerk's office in its filing responsibilities. See S.B. Rep. on Engrossed S.B. 5449, 53d Leg., Reg. Sess. (Wash.1994) (Representatives testified the new statutory provision was "important to the staffs of the court clerks" and would "help to assure that information disseminated by courts is accurate."). To give interpretive priority to RCW 6.01.020 would nullify the legislature's action in adopting the statutory scheme that includes RCW 4.64.030. Due to our preference for specific and recent statutes, we should afford interpretive priority to RCW 4.64.030(3).
¶ 37 As Documents 1375 and 1376 lacked the summaries required by RCW 4.64.030, they were not effective as judgments. In holding otherwise, the majority fails to give meaning to the plain language of RCW 4.64.030(3) and ignores time-honored canons of statutory construction. Because I would give greater deference to these canons and the intent of the legislature as evidenced by the language it adopted, I respectfully dissent.
NOTES
[1] The document numbers used in this opinion consist of the last four digits of the number used by the King County auditor to record documents filed by Treiger.
[2] The Bank did not cross-appeal the trial court's determination that Documents 1371, 1373, and 1374 were judgments entitled to priority in the distribution of the net sale proceeds.
[3] Had it created a statutory lien, there would be uncertainty. A statutory lien attaches to all of a judgment debtor's existing and later acquired real estate. RCW 4.56.190. Any purchaser of the judgment debtor's encumbered properties, other than the one ordered sold, would be unable to determine the amount of the lien on the property they sought to purchase until the property subject to the lien had been sold. Cf. Swanson, 27 Wash.2d at 598, 179 P.2d 288 (identifying uncertainty of persons dealing with the judgment debtor as a relevant concern).
[4] The same is true of Document 1371. The Supplemental Decree expressly incorporated the award set forth in Document 1371. The summary judgment order awards Treiger both amounts, an apparent double recovery. The Bank has not appealed from this error; in fact, it appears to have invited the error.
[5] The specific sale contemplated by Document 1376 did not take place. However, the property later sold for $75,000 more than the sale contemplated by Document 1376, and Document 1376 did not rely upon specific dollar amounts. Thus, implementation of Document 1376 was not frustrated by the later sale.
[6] The legislature might make the creation of a lien on a judgment debtor's real property contingent on entry of the judgment in the execution docket. It has not yet done so.