IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 84232-3-I |
| JENNELL PRENTICE, | DIVISION ONE |
| Respondent/Cross-Appellant, | |
| v. | UNPUBLISHED OPINION |
| ANTHONY PRENTICE, | |
| Appellant/Cross-Respondent. | |

SMITH, A.C.J. — Anthony Prentice and Jennell Endrizzi (f/k/a Prentice) finalized their dissolution in 2009. The dissolution decree ordered the parties to split the net proceeds from the sale of the house without providing a deadline for the sale, and awarded the house to both Prentice and Endrizzi as tenants in common.

Eleven years later, Endrizzi filed a motion to enforce the dissolution decree and requested that the court order Prentice to pay her one-half the equity in the home by a date certain or order Prentice to place the property for sale to comply with the terms of the decree. The trial court ordered the sale of the home and for the parties to split the equity presently in the house with additional offsets awarded to Prentice for house upkeep and maintenance. Because Endrizzi

Citations and pin cites are based on the Westlaw online version of the cited material.

executed a quit claim deed conveying her interests in the house to Prentice after the entry of the dissolution order but before she began this lawsuit, we reverse.

FACTS

Anthony Prentice and Jennell Endrizzi finalized their dissolution in July 2009. The dissolution decree awarded both parties as separate property "[o]ne-half net proceeds from the sale of the family home" and awarded Prentice "[a]n additional $2,500 above [his] one-half net proceeds." The decree provided that the parties were to remain tenants in common and awarded Prentice permission to continue to reside in the home. It also provided that "both parties will be considered to have the home as their principal residence for capital gains purposes." It ordered that Prentice would pay the mortgage until the home sold and that Endrizzi would assume other community debts.

The decree did not provide a timeline for when the home was to be sold. However, neither party disputes that they intended to sell the home shortly after the dissolution was finalized. Indeed, it can be inferred from the language in the decree that this was the court's understanding too; for example, Endrizzi was awarded the family refrigerator, to be delivered within ten days of the sale.

After the dissolution, Prentice remained in the home and Endrizzi moved out. The parties tried to sell the home in the years following but were unsuccessful, due in part to an economic downturn. Both parties endured financial struggles in the following years. Prentice fell behind on mortgage payments and was in danger of foreclosure and Endrizzi filed for bankruptcy in 2011.

In 2012, Endrizzi signed a quit claim deed conveying all her interest in the family home to Prentice. The parties do not dispute that Endrizzi executed the quit claim deed on her own volition and that Prentice did not request the deed. They do, however, dispute the intent and effect of the quit claim deed. Endrizzi maintains that she executed the quit claim deed so that Prentice and Endrizzi's father (who lived next door) could negotiate the terms of a well agreement and so that Prentice could sell the home while Endrizzi lived out-of-state. Prentice contends that Endrizzi did not communicate any of these reasons with him; rather, Endrizzi executed the deed without any prior discussions or agreements as to the parties' intended course of action. Endrizzi admits that Prentice "did not ask for the quit claim deed and [the parties] did not discuss it."

Soon thereafter, Endrizzi moved to Minnesota to start a new job. In the meantime, Prentice assumed full responsibility for the couple's two younger children and continued working with his bank to avoid foreclosure. In 2013, the bank approved Prentice's hardship application and he was able to refinance the home.

Seven years later, in 2020, Endrizzi filed an action to enforce the dissolution decree. She claimed she tried to convince Prentice to sell the house "many times over the years" to no avail. However, in support of this claim, Endrizzi produced a single email she sent to Prentice in July 2020, two months before filing her motion to enforce the decree and shortly before Prentice was to get remarried. Prentice asserted that Endrizzi never raised the issue with him after 2012. He argued that Endrizzi forfeited all her rights to the house by signing

3

the quit claim deed in 2012 and by surrendering the house as an asset on her bankruptcy petition. He also asserted that the statute of limitations and principles of equity barred Endrizzi's claim. The trial court ordered the home to be sold and for Endrizzi to receive half of any equity less $12,553.10 awarded to Prentice (constituting the $2,500 awarded in the decree and the money he spent in home upkeep). The trial court did not make findings of fact or conclusions of law in its order, although it did issue a letter ruling explaining the order. Prentice appeals. Endrizzi cross appeals.

## ANALYSIS

The parties assert the trial court made several errors when it entered its order, including its interpretation of the quit claim deed's effect, the applicable statute of limitations, the application of equitable principles, and the court's modified award. Because we conclude that interpretation of the quit claim deed is dispositive of this case, we do not reach the other issues. Before analyzing the quit claim deed, we first examine rights created by the dissolution decree. Framing our analysis is our review of the trial court's order enforcing the dissolution decree, which we review de novo. In re Marriage of Thompson, 97 Wn. App. 873, 877, 988 P.2d 499 (1999).

### Dissolution Decree

In a dissolution proceeding, the trial court must " 'dispos[e] of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors.' " In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (alteration in original)

4

(quoting RCW 26.09.080). To accomplish that end, trial courts have wide discretion to fashion a dissolution order that will address the circumstances of the parties. Bulicek v. Bulicek, 59 Wn. App. 630, 634, 800 P.2d 394 (1990). For example, when assets cannot be justly and equitably divided, a greater portion of the estate may be awarded to one spouse with an offsetting obligation to pay the other. See, e.g., In re Marriage of Tower, 55 Wn. App. 697, 780 P.2d 863 (1989) (husband awarded disproportionate share of community property but required to pay wife permanent maintenance). Likewise, an unequal division of property may be justified if it is offset by maintenance or similar compensating payments. Thompson v. Thompson, 82 Wn.2d 352, 357-58, 510 P.2d 827 (1973).

Parties to a dissolution action have the right to have their property interests definitively and finally determined in the decree. Stokes v. Polley, 145 Wn.2d 341, 347, 37 P.3d 1211 (2001). Therefore, courts have a duty to not award property to parties as tenants in common. Stokes, 145 Wn.2d at 347. Still, a court may award the family home to both parties as tenants in common when an option to purchase the property is outstanding, or subject to the requirement that the home be placed on the market within a fixed period of time. 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY LAW AND COMMUNITY PROPERTY LAW § 32:28 (2nd ed. 2015). Also, "[t]he parties may wish to remain owners of the home as tenants in common so they can both take advantage of potential increased equity based on market conditions." 20 HORENSTEIN, supra, at 242. However, caution is required when leaving spouses as tenants in common, as issues may likely arise. 20 HORENSTEIN, supra, at 242.

> A common way for a court to structure a property distribution is to award a valuable asset—such as the family home—to one party, but subject to a requirement that either (1) the party awarded the asset pay a specified amount of money to the other party within a specified period of time, or (2) the asset be sold within a specified period of time and a specified amount of money paid to the other party out of the sale proceeds.

20 HORENSTEIN, supra, § 32:32 at 247-48. Such obligations are typically secured by an equitable lien on the partitioned property to assure payment, sometimes called an owelty lien. In re Marriage of Wintermute, 70 Wn. App. 741, 744, 855 P.2d 1186 (1993); Hartley v. Liberty Park Assocs., 54 Wn. App. 434, 438, 774 P.2d 40 (1989).[1] An equitable lien is not a property interest but rather a remedy intended to protect one party's right to reimbursement. Monegan v. Pacific Nat'l Bank of Wash., 16 Wn. App. 280, 287-88, 556 P.2d 226 (1976); 5 TIFFANY REAL PROP. § 1559 (3d ed) ("An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a jus in re nor a jus ad rem; neither a debt nor a right of property, but a remedy for a debt."). It may be created by agreement of the parties or imposed by the dissolution decree. Wintermute, 70 Wn. App. at 745.

To create an equitable lien, the court must issue an express order that "fasten[s] the debt to real property that is before the court and specifically identified." Bank of Am., N.A. v. Owens, 173 Wn.2d 40, 49-50, 266 P.3d 211 (2011). "In determining whether the trial court created an equitable lien on a parcel of real estate, we look to the actual language of the judgment, read in its

---

[1] An "owelty" lien more commonly refers to the first scenario, where one party is awarded an offsetting, compensating sum. The second scenario results in an equitable lien.

context and entirety." Owens, 173 Wn.2d at 50. And while helpful, "the term 'lien' is not required where the court's intent is clear." Owens, 173 Wn.2d at 50; see, e.g., Byrne v. Ackerlund, 108 Wn.2d 445, 446, 739 P.2d 1138 (1987); cf. Philbrick v. Andrews, 8 Wash. 7, 7, 9, 35 P. 358 (1894) (holding that an order imposing a "lien upon the property" of a defendant did not create an equitable lien because it did not identify any particular property); Stokes, 145 Wn.2d at 344 (holding that an award of "one-half the equity" in certain real estate constitutes a monetary award).

Prentice asserts that the decree awarded both parties a property interest in the house as tenants in common and that the sale proceeds are inherently wedded to that interest. Endrizzi contends that the decree created two separate rights, a property interest via the tenancy in common, and an equitable owelty lien via the award of the sale proceeds. We conclude that the decree created only a property interest as tenants in common.

We review de novo the language in a dissolution decree. Thompson, 97 Wn. App. at 877. We read and construe decrees as a whole, giving meaning and effect to every word. Stokes, 145 Wn.2d at 346. If the language of the decree is clear and unambiguous, there is no room for interpretation. Byrne, 108 Wn.2d at 453.

Here, read in its entirety, the dissolution decree awards only property interests as tenants in common. Under section 1.3, entitled "Money Judgment Summary," the decree states: "Does not apply." It follows that there was no monetary award created. In contrast, under sections 3.2 and 3.3, entitled

"Property to be Awarded to the Husband" and "Property to be Awarded to the Wife" respectively, the decree awards to each party "as [his and her] separate *property* the following *property*: [o]ne-half net proceeds . . . from the sale . . . of the family home." (Emphases added). In a subparagraph of Section 3.15, entitled "Family Home," the decree states that "[t]he home is awarded to the parties as tenants-in-common."

The decree is consistent in focusing on the property interests it creates and disavowing the creation of any sort of monetary interest. This framing indicates that the awards of one-half net proceeds are property rights that flow from the parties' ownership interest as tenants in common. We conclude that the decree created only property rights as tenants in common.

Despite this, Endrizzi contends that she possesses an equitable owelty lien and that equity disfavors extinguishment of equitable liens. In support of this contention, Endrizzi relies on Owens, in which a supplemental dissolution decree created an equitable lien in favor of one spouse for one-half proceeds from the sale of a property. 173 Wn.2d at 45. But despite certain similarities, in particular the award of a portion of the proceeds of the sale of real property, this case is distinguishable from Owens.

In Owens, the former husband quit claimed his interest in the property in exchange for $215,000 before the final property division. 173 Wn.2d at 45. In the supplemental decree on property division, the trial court ordered the sale of the property and awarded the husband one-half net proceeds from the sale. Owens, 173 Wn.2d at 45. On appeal from a declaratory judgment action, our

8

Supreme Court held that the supplemental decree created an equitable lien in favor of the husband for one-half net proceeds. Owens, 173 Wn.2d at 49. In determining whether an equitable lien was created, the Court looked to "the actual language of the judgment, read in its context and entirety." Owens, 173 Wn.2d at 50. The Court concluded that the decree created an equitable lien; although the decree did not provide a sum certain, it did specifically identify the property, including the tax parcel number, and it fastened the husband's award to that property. Owens, 173 Wn.2d at 50.

The timeline of events distinguishes the present case from Owens. In Owens, the parties executed a quit claim deed *before* the final property division. 173 Wn.2d at 45. As a result of the quit claim deed, the husband in Owens possessed no property interest in the home. 173 Wn.2d at 45. Any interest in the sale was therefore created purely by the dissolution decree; there was no preexisting interest with which the court was concerned. Unlike the present case, the interest created in Owens was an equitable lien on the property. 173 Wn.2d at 49. Liens are mechanisms for securing monetary interest by way of a collateral property. 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES – DEBTORS' RELIEF § 4.1 (2022); Krueger v. Tippett, 155 Wn. App. 216, 225, 229 P3d 866 (2010) ("[A] lien is . . . '[a] legal right or interest that a creditor has in another's property, lasting . . . until a debt or duty that it secures is satisfied.' ") (quoting BLACK'S LAW DICTIONARY 918 (9th ed. 2009)). By way of comparison, here, Endrizzi already possessed a property interest in the home as a tenant in common and was already entitled to proceeds of a sale.

9

Further, the decree here denies creating a monetary interest. The decree, therefore, must have been defining the impact of the tenancy in common property interest on the occasion of a sale.

Effect of Quit Claim Deed

We next turn to the effect of the quit claim deed on the property rights created by the decree. Prentice asserts that the quit claim deed extinguished all Endrizzi's rights under the decree and that the trial court erred in considering extrinsic evidence to limit the effect of the deed. Endrizzi contends that even if the quit claim deed extinguished her property rights in the home, she possessed an equitable owelty lien that survived. We addressed this argument above and concluded she possessed only a property interest as a tenant in common. Endrizzi also argues that she quit claimed her property interests to allow Prentice to facilitate a well agreement and sale of the home and that this extrinsic evidence should be considered to limit the effect of the quit claim deed. Because the quit claim deed is unambiguous, it is therefore not appropriate to use extrinsic evidence and we conclude that Endrizzi extinguished all her property interests in executing the quit claim deed.

Interpretation of a deed is a mixed question of law and fact. Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 64, 277 P.3d 18 (2012). " 'What the original parties intended is a question of fact and the legal consequence of that intent is a question of law.' " Pelly v. Panasyuk, 2 Wn.App.2d 848, 864, 413 P.3d 619 (2018) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). " '[D]eeds are construed to

10

give effect to the intentions of the parties.' " Newport Yacht Basin Ass'n, 168 Wn. App. at 64 (alteration in original) (quoting Zunino v. Rajewski, 140 Wn. App. 215, 222, 165 P.3d 57 (2007)).

While intent is a factual question, "a deed must be ambiguous before extrinsic evidence is properly considered." Newport Yacht Basin Ass'n, 168 Wn. App. at 70 (noting that the Washington Supreme Court has declined to use extrinsic evidence outside the context of railroad right-of-way disputes). If a deed is unambiguous, intent must be ascertained from the four corners of the documents and extrinsic evidence may not be used to demonstrate an intent to convey some lesser interest. Hanson Indus., Inc. v. County of Spokane, 114 Wn. App. 523, 527, 58 P.3d 910 (2002); Newport Yacht Basin Ass'n, 168 Wn. App. at 60. We review de novo whether a deed is ambiguous. Newport Yacht Basin Ass'n, 168 Wn. App. at 64 ("We review questions of law and conclusions of law de novo."). If a deed is not ambiguous, our assessment of the parties' intent is also de novo. See Hoglund v. Omak Wood Prod., Inc., 81 Wn. App. 501, 504, 914 P.2d 1197 (1996).

A quit claim deed that is duly executed conveys "all the then existing legal and equitable rights of the grantor in the premises therein described." RCW 64.04.050. The form of quit claim deeds in Washington is governed by statute. RCW 64.04.050. The statute provides the following template form language that parties may use:

> The grantor (here insert the name or names and place of residence), for and in consideration of (here insert consideration) conveys and quitclaims to (here insert grantee's name or names) all

11

> interest in the following described real estate (here insert description), situated in the county of ......, state of Washington. Dated this .... day of ......, (year).

RCW 64.04.050.

The statute also provides that:

> Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quitclaim to the grantee, his or her heirs and assigns in fee of all the then existing legal and equitable rights of the grantor in the premises therein described, but shall not extend to the after acquired title unless words are added expressing such intention."

RCW 64.04.050.

However, "a quitclaim deed need not precisely match the form described in RCW 64.04.050 in order to convey fee title." Newport Yacht Basin Ass'n, 168 Wn. App. at 67. " '[T]he operative words of a quitclaim deed are conveys and quitclaims.' " Bale v. Allison, 173 Wn. App. 435, 446, 294 P.3d 789 (2013) (alteration in original) (internal quotation marks omitted) (quoting Newport Yacht Basin Ass'n, 168 Wn. App. at 67).

> Here, the quit claim deed executed by Endrizzi states:
>
> Grantor [Endrizzi], for good consideration
>
> the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said Grantee [Prentice] *forever, all the right, title, interest and claim which the said Grantor has in and to the following described parcel of land*, and improvements and appurtenance thereto in the County of Thurston, State of Washington, to Wit
>
> [legal description of the home].

(Emphases added). The deed also states that it was prepared by Endrizzi.

As an initial matter, we note the trial court did not make a determination that the deed was ambiguous and the use of extrinsic evidence is unwarranted. That the parties disagreed as to the purpose of the document does not indicate ambiguity and the court erred in considering extrinsic evidence of Endrizzi's intent.

Endrizzi's deed contains substantially the same language as that found in RCW 64.04.050 and is unambiguous. It conveys "forever[] all the right, title, interest and claim" that Endrizzi held "in and to" the house. The deed unquestionably conveys all property interests Endrizzi once held. Because she possessed no other rights in the house following the execution of the quit claim deed, we therefore conclude that the quit claim deed extinguished her rights in the house under the dissolution decree.[2]

In an attempt to limit the impact of the deed, Endrizzi contends that pursuant to our Supreme Court's decision in In re Marriage of Watanabe, extrinsic evidence should be allowed to interpret her intent in signing the quit claim deed, regardless of ambiguity. 199 Wn.2d 342, 506 P.3d 630 (2022). She

---

[2] Endrizzi was not without options for protecting her interests in the house. When her attorneys drafted the final dissolution decree, they could have written the decree to award each party one-half the equity in the home as of a certain date. Or the decree could have included a lump sum monetary award secured by the home's sale.

Although the parties dispute the effect of Endrizzi's 2011 bankruptcy filing on her interests in the house, the bankruptcy proceeding did not discharge her ownership interest in the house. See, e.g., In re Marriage of Penry, 119 Wn. App. 799, 803, 82 P.3d 1231 (2004) (where dissolution decree established party as an owner and not a creditor, ownership interest in the home was not dischargeable in bankruptcy proceeding).

claims that she executed the deed "so that Mr. Prentice and [her] father could handle issues of the well in [her] absence and to also make it easier to facilitate the sale of the home as [she] was residing outside of the State of Washington." In Watanabe, the Court held that "[e]xtrinsic evidence showing a spouse's intent when signing the quitclaim deed may be considered in determining the character of property in a dissolution proceeding." 199 Wn.2d at 355.

But Watanabe is markedly different from the case at hand. There, the parties disputed whether a quit claim deed executed while the parties were married transmuted the wife's separate property into community property. Watanabe, 199 Wn.2d at 352. The court noted that while " 'a spouse may execute a quitclaim deed transferring [] property to the community,' " " '[t]here are many reasons it may make good business sense for spouses to create joint title that have nothing to do with any intent to create community property.' " Watanabe, 199 Wn.2d at 352 (quoting In re Estate of Borghi, 167 Wn.2d 480, 488-89, 219 P.3d 932 (2009)). Therefore, to rebut the presumption that property is community property, extrinsic evidence is admissible as proof of an intent for property to remain separate. Watanabe, 199 Wn.2d at 354.

Here, the characterization of the family home here is not in dispute—the decree awarded it as separate property to each party—and allowing extrinsic evidence of Endrizzi's intent in executing a quit claim deed years after the dissolution decree is improper because the deed itself is unambiguous.

We reverse and remand to the trial court to vacate the order enforcing the decree. Because this issue is dispositive, we do not reach the other issues raised by the parties.

Smith, A.C.J.

WE CONCUR:

Birk, J.

Andrus, C.J.